BYRNES, Judge.
Ezzard and Ella Charles appeal a jury verdict dismissing their action- for injuries in a single-car collision. We affirm.
On August 20, 1987, Mr. and Mrs. Ez-zard Charles traveled with their two children from New Orleans to Star City, Arkansas to attend the funeral of Mrs. Charles’ father. The Charleses drove in their Hyundai Excel GLS which they purchased from Bill Watson Hyundai in May, 1987. After they arrived at Mrs. Charles’ mother’s home around 8:00 — 8:30 p.m., Ez-zard Charles and his wife’s nephew, Aaron Harris, drove toward Pine Bluff on Highway 81 North between 9:30 and 10:00 p.m. to buy groceries. At a curve in the highway, the vehicle went off the road onto the shoulder, rolled and flipped over one and a half times. The rollover resulted in the ejection of Ezzard Charles through the driver’s window, causing him to become a paraplegic.
Mr. and Mrs. Charles sued the manufacturer, Hyundai Motor America Corporation (Hyundai), and the dealer, Bill Watson Hyundai, Inc. Plaintiffs alleged that the passive restraint system without a lap belt was defective in that it allowed Ezzard Charles to be ejected from the vehicle, causing Ezzard Charles’ paralysis. After a jury trial on January 9-25, 1989, the trial court entered a judgment in favor of the defendants and dismissed plaintiffs’ suit at their cost.
On appeal, plaintiffs argue that the trial court erred in (1) improperly framing the wording of the first jury interrogatory; and (2) granting defendants a directed verdict on their negligence cause of action.
The interrogatories submitted to the jurors used in determination of their verdict included the following:.
1. DO YOU FIND THAT MR. CHARLES WAS UTILIZING THE VEHICLE’S OCCUPANT RESTRAINT SYSTEM AT THE TIME OF THE ACCIDENT?
YES_NO _
IF THE ANSWER TO QUESTION NO. 1 IS “NO”, SIGN THIS FORM AND RETURN TO THE COURTROOM.
IF THE ANSWER TO QUESTION NO. 1 IS “YES”, THEN PROCEED TO QUESTION NO. 2.
2. DO YOU FIND THAT THE PASSIVE RESTRAINT SYSTEM MANUFACTURED BY THE DEFENDANTS, HYUNDAI MOTOR AMERICA CORPORATION AND BILL WATSON HYUNDAI, INC., WAS DEFECTIVE WHEN IT LEFT THE DEFENDANTS’ CUSTODY AND CONTROL SO AS TO BE UNREASONABLY DANGEROUS TO NORMAL USE?
YES _NO _
IF THE ANSWER TO QUESTION NO. 2 IS “NO”, THEN SIGN THIS FORM AND RETURN TO THE COURTROOM. IF THE ANSWER TO QUESTION NO. 2 IS “YES”, PROCEED TO QUESTION NO. 3.
3. DO YOU FIND THAT THE DEFECTIVE CONDITION OF THE EQUIPMENT OF HYUNDAI MOTOR AMERICA CORPORATION AND BILL WATSON HYUNDAI, INC. WAS THE LEGAL CAUSE OF AN INJURY TO PLAINTIFF, EZZARD CHARLES?
YES _NO _
IF THE ANSWER TO QUESTION NO: 3 IS “NO”, SIGN THIS FORM AND RETURN TO THE COURTROOM. IF THE ANSWER TO QUESTION NO. 3 IS “YES”, THEN PROCEED TO QUESTION NO. 4.
4. DO YOU FIND THAT THE PLAINTIFF’S NEGLIGENCE CONTRIBUTED *874 TO THE FAILURE OF THE PASSIVE RESTRAINT SYSTEM?
YES _NO _
IF THE ANSWER TO QUESTION NO. 4 IS “NO”, THEN PROCEED TO QUESTION NO. 6.
IF THE ANSWER TO QUESTION NO. 4 IS “YES”, THEN PROCEED TO QUESTION NO. 5.
5. WHAT PERCENTAGES OF FAULT DO YOU ASSIGN TO THE FOLLOWING PARTIES:
HYUNDAI MOTOR AMERICAN CORPORATION AND BILL WILSON HYUNDAI, INC_ EZZARD CHARLES_ TOTAL_
THE TOTAL MUST EQUAL 100%. PROCEED TO QUESTION NO. 6.
6. WHAT AMOUNT OF MONEY, IF ANY, DO YOU FIND WOULD ADEQUATELY COMPENSATE EZZARD CHARLES FOR HIS INJURIES?
$-
PROCEED TO QUESTION NO. 7.
7. WHAT AMOUNT OF MONEY, IF ANY, WOULD COMPENSATE ELLA CHARLES FOR LOSS OF CONSORTIUM, SERVICE AND SOCIETY WHICH SHE SUSTAINED AS A RESULT OF THE INJURIES TO EZZARD CHARLES?
$-
SIGN THE FORM AND RETURN TO THE COURTROOM.
Plaintiffs object to the instruction to the jurors to return to the courtroom without proceeding to the second interrogatory, contending that the instruction improperly precluded a comparative negligence analysis. Mr. and Mrs. Charles assert that the wording of the first interrogatory failed to provide an opportunity to determine the principals of cause-in-fact between the plaintiffs’ injuries and the defendants’ product. Plaintiffs aver that under La.R.S. 32:295.1E(4), failure to wear a seat belt shall not be considered evidence of comparative negligence and is only a mitigating factor. Additionally, a driver’s alcoholic consumption does not defeat recovery but operates to reduce damages. Boubel v. Gilardi, 532 So.2d 948 (La.App. 5th Cir.1988). The plaintiffs contend that the trial judge erred in directing the first jury interrogatory towards Mr. Charles’ activities prior to the original accident rather than on the normal use of the passive restraint system in the Hyundai vehicle alleged by plaintiffs to be defective.
To recover from a manufacturer or seller under a strict products liability theory, the plaintiff must prove:
(1) that the injury or damage resulted from the condition of the product;
(2) that the condition made the product unreasonably dangerous to normal use; and
(3) that the condition existed at the time the product left the control of the manufacturer or supplier.
Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985). Louisiana R.S. 9:2800.56 provides that a product is unreasonably dangerous if, at the time the product left the manufacturer’s control: (1) there existed an alternative design for the product capable of preventing claimant’s damages; and (2) the likelihood that the product’s design would cause the claimant’s damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design. However, prior to the analysis of a defect, the initial question to be considered by the trier of fact is the issue of causation. Laborde v. Velsicol Chemical Corporation, 474 So.2d 1320, 1334 (La.App. 3d Cir.1985), writ denied, 480 So.2d 738 (La.1986). The first element of the plaintiff’s burden of proof under a theory of products liability is finding that the evidence clearly proves a causal relationship between the injuries and the use of the product. Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754, 756 (La.1971). If the actions of the defendant did not cause the injury, then it becomes immaterial whether there was a duty or a breach. Hayes v. City of New Orleans, 527 So.2d 1002, 1004 (La.App. 4th Cir.1988), writ denied by Stewart v. City of New Orleans, 532 So.2d 770 (La.1988).
*875 The jury concluded that Ezzard Charles was not utilizing the restraint system at the time of the accident. Therefore, it is immaterial whether the restraint system was defective or unsafe if the driver did not use that system. Plaintiff failed to show the causal connection between the use of the restraint system and the injury. Therefore, it is unnecessary to reach the issue of comparative negligence. The trial court properly instructed the jury to return to court.
Plaintiffs present a second issue that the trial court erred in granting the defendants’ motion for a directed verdict on their negligence claim because plaintiffs provided proof that the defendants were negligent. Plaintiffs contend that by granting the directed verdict on the negligence issue, the trial court deprived plaintiffs of the duty-risk analysis in a comparative negligence theory.
To incur liability, defendants must be found to be either negligent or strictly liable. While the basis for determining the existence of a duty is different in strict liability and ordinary negligence eases, the duty is the same. Manasco v. Poplus, 530 So.2d 548 (La.1988); Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.1988), writ denied, 533 So.2d 22 (La.1988). In a strict liability case as opposed to a typical negligence case, the claimant is only relieved of proving that the proprietor knew or should have known of the risk involved. Tipton v. Bossier Parish, 441 So.2d 453 (La.App. 2d Cir.1983). The plaintiff not only has the burden of proving that the product is defective but also that his injuries were caused by the defect. Scott v. White Trucks, 699 F.2d 714 (5th Cir.1983). Lack of causation defeats liability under La.C.C. Art. 2315 or 2317. Hayes v. City of New Orleans, supra, 527 So.2d at 1004. Because the jury found that Ezzard Charles was not utilizing his restraint system at the time of his accident, it is irrelevant whether his claims against Hyundai are based on strict liability or negligence. Plaintiffs assert that granting a directed verdict on the negligence issue precluded a comparative negligence duty-risk analysis. Comparative negligence principles apply under a product liability as well as negligence theory. Bell v. Jet Wheel Blast, supra, 462 So.2d 172. The trial court properly compiled Interrogatories Numbers 4 and 5 to include a comparative negligence analysis. However, the jury did not reach that issue. The passive restraint system was not the cause in fact of the accident and the defendants could breach no duty. Whether the trial court rejected a negligence theory on directed verdict is immaterial. Defendants could not be liable under a theory of negligence or products liability.
The Hyundai passive restraint system consisted of three parts: a two-point seat belt, a specially designed seat and a knee bolster structure in the instrument panel. The passive strap latched to a buckle on the window frame adjacent to the occupant’s head, fit diagonally across the occupant’s seat and attached next to the occupant’s hip mounted on the seat. The passive system automatically would retract and fit across the occupant’s chest and inside hip when the door closed. The system could be released manually, allowing the strap to be detached.
At trial the parties provided contradictory evidence as to whether Ezzard Charles was using the passive restraint system at the time of the accident. Mr. Charles and the passenger, Aaron Harris, testified that Ezzard was using the restraint system although Harris stated he had disconnected his strap on the passenger side. Ella Charles testified that the restraint system always remained fastened and she never saw her husband disconnect the system while driving. Evidence showed that approximately 80 percent of the people who purchase vehicles with passive restraint systems do not deactivate them. Plaintiffs’ expert, Mr. Greenlees, concluded that Ezzard Charles’ restraint system was connected but that he slipped out or the buckle became disengaged during the rollover.
The experts agreed that Ezzard Charles created marks on the ceiling over the passenger side of the vehicle during the initial rollover to the right. Greenlees believed *876 that the plaintiff could have created the marks while the restraint system was engaged. However, defendants’ experts in the field of accident reconstruction and testing, Terrance M. Thomas and Lee Carr, as well as Dr. James Benedict, expert in the field of occupant kinematics, biochem-ics and injury causation, took the position that Ezzard Charles could not have made the ceiling marks with as much impact if the restraint mechanism were connected.
Greenlees found no loading marks on Ezzard Charles’ belt itself. Nor did the defendants’ experts, who opined that if the belt were attached during the accident, a great deal of force on impact would have caused striated marks on the webbing at the end of the belt. On cross-examination, Greenlees affirmed that whatever released the button would have disengaged the release mechanism but would not have been supplied sufficient force to damage the button. Arkansas State Trooper Roger McLe-more testified that he found both belts disconnected after the accident. On his accident report, the officer indicated zero under type of restraint, meaning no restraint system was fastened.
Additional inconsistencies existed in the testimony provided by the witnesses to the events on the night of the accident. Ez-zard Charles claimed he drank only four or five beers on the day of the accident. Mrs. Charles, Aaron Harris, Johnnie Branch and Jessie Trotter all testified that Ezzard Charles did not appear intoxicated nor was drinking allowed at Ella’s mother’s house. However, Dr. Monroe Samuels, defendants’ expert in the field of forensic toxicology, reviewed the reports from the two hospitals where Ezzard was taken on the night of the accident. The reports indicated that Mr. Charles registered a blood alcohol level of .24 percent two and a half hours after the accident and .146 percent seven hours after the accident. Dr. Samuels observed that Mr. Charles’ faculties were significantly impaired. The jury could find that Ez-zard Charles’ memory of the events was inconclusive.
Passenger Aaron Harris testified that when she questioned him, Harris told Mrs. Manning, an ambulance assistant on the accident scene, that he was not using the restraint system but Mr. Charles was wearing his strap. Mrs. Manning testified that she did not ask Harris about the events of the accident, and Harris did not say anything about seat belts but only stated that they were going fast.
The videotaped deposition of Charles Pugh was presented to the jury. Pugh was driving south in the opposite direction on the highway when his ear was sprayed by gravel by Charles’ vehicle. Pugh’s brother saw the Hyundai flipping over and Pugh stopped. Pugh testified that at the scene Harris said, “I told him to let me drive, but he wouldn’t let me drive.” Pugh also noted that Ezzard Charles stated that Aaron Harris was driving. Pugh testified when he went to notify Mrs. Charles in Star City, Harris’ mother, Mrs. Branch, stated that Mr. Charles and Harris shouldn’t have left because Ezzard Charles was drunk when he got there. Ella Charles, Harris, and Harris’ mother, Johnnie Branch, denied this statement.
The reviewing court must give great weight to factual conclusions of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rossell v. Esco, 549 So.2d 840 (La.1989). Evidence was presented at trial upon which the jury could conclude that Mr. Charles’ passive restraint system was not fastened prior to the accident.
For the above reasons, the judgement is affirmed with the parties to pay their own costs of appeal.
AFFIRMED.