506 So.2d 1319 (1987)
James Neil ANDERSON, Plaintiff-Appellant,
v.
FOWLER TRUCKING, INC., et al., Defendants-Appellees.
No. 18660-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
*1320 Hargrove, Guyton, Ramey & Barlow by Joseph L. Shea, Jr. and Clair F. White, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Caldwell Roberts and John C. Turnage, Shreveport, for defendants-appellees Fowler Trucking, Inc., USF & G, Billy Ray Hall and Anthony Hill.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, for intervenor Aetna Cas. & Sur. Co.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, James Neil Anderson, filed suit against the defendants, Fowler Trucking, Inc., its employees Billy Ray Hall and Anthony Hill, and its insurer, United States Fidelity and Guaranty Company, for personal injuries received in an oil rig accident. The case was tried by jury and the jury found that the defendants were not at fault in causing the accident. From that jury verdict, the plaintiff has appealed and the intervernor, Aetna Casualty and Surety Co., has answered the appeal. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff was employed as a driller by Sawyer Drilling Company. In his petition, the plaintiff alleges that on April 7, 1982, in the course and scope of his employment with Sawyer, he was engaged in the process of "rigging up" an oil drilling rig. This operation involved the installation of top and bottom "dog houses" on the rig. The "dog houses" are metal buildings weighing from 15,000 to 25,000 pounds and are used for shelter and for storing equipment. The bottom "dog house" had been successfully installed and the top "dog house" was being lifted into place by means of a truck and winch known as a gin pole truck. This truck was owned by Fowler Trucking and was operated by Billy Ray Hall, an employee of Fowler. Anthony Hill, also an employee of Fowler, was working as the swamper and was standing outside the truck relaying instructions to the driver. The "dog house" was to be placed on angle irons. The plaintiff alleged that the "dog house" was not fitting onto the rig correctly and he was attempting to move it into place by use of a pry bar. Plaintiff alleged he told the Fowler employees to "get a bind on it," meaning to lift up on the "dog house." Plaintiff alleged that while he was using the pry bar, the truck lowered the "dog house," causing the plaintiff's right foot to be crushed between the pry bar and the substructure of the rig. Plaintiff suffered nondisplaced fractures of three bones on the top of his right foot and eventually underwent surgery to alleviate pressure on nerves in the foot brought on by excess swelling following the injury. The plaintiff alleged that the accident was caused by the negligence of Fowler Trucking and its employees and claimed entitlement to $751,429.65 in damages.
Aetna Casualty & Surety Company, the worker's compensation insurer of Sawyer Drilling, filed a petition of intervention to recover worker's compensation benefits and medical benefits paid to the plaintiff.
The defendants answered plaintiff's petition with a general denial and then amended the answers to assert that Billy Ray Hall and Anthony Hill were the statutory employees of Sawyer Drilling and that the defendants were therefore immune from tort liability. The trial court granted a directed verdict in favor of the plaintiff and against the defendant on the issue of statutory employee status, finding that the defendants were not the statutory employees of Sawyer Drilling.
The case was tried before a jury. The hospital records and medical bills of the plaintiff were admitted pursuant to a joint stipulation. The parties also stipulated the amount of worker's compensation benefits paid by Aetna to the plaintiff to be $69,615.76.
The jury found in favor of the defendants and against the plaintiff on the issue of negligence. The jury found that the defendants were not at fault in causing the accident.
*1321 The plaintiff filed a motion for a judgment notwithstanding the verdict or for a new trial, claiming the evidence clearly showed that the defendants were negligent and that the jury verdict was contrary to the law and evidence. The trial court denied plaintiff's motion.
The plaintiff filed a devolutive appeal, asserting that the jury verdict was contrary to the law and evidence. The plaintiff also contends that the trial court erred in excluding jury instructions regarding concurrent cause and erred in failing to advise the jury of its ruling which overruled a motion for directed verdict in which the defendant's statutory employee defense was denied. The plaintiff further asserts that the trial court erred in including erroneous or invalid instructions regarding an employer's duty to provide a safe work place for its employees. The intervenor, Aetna Casualty & Surety Company, answered the appeal asserting that if a judgment is ultimately rendered in favor of the plaintiff, the intervenor is entitled to recover for amounts paid to plaintiff in worker's compensation benefits and medical expenses.
We affirm the jury verdict finding that the defendants were not at fault in causing the plaintiff's injury. For the reasons set forth below, we do not consider plaintiff's allegations that the trial court erred in excluding certain jury instructions suggested by the plaintiff and erred in including certain instructions suggested by the defendant.

JURY VERDICT
The plaintiff argues that the jury's finding that neither Fowler Trucking nor its employees were at fault in causing this accident is clearly wrong and manifestly erroneous. For the following reasons, we find the plaintiff's argument to be meritless.
Numerous interrogatories were propounded to the jury to enable them to arrive at a verdict. The first interrogatory asked, "Was Fowler Trucking Company or any of its employees at fault." The interrogatory then indicated that if the jury responded negatively to the interrogatory, there was no need to answer the remaining interrogatories. The jury voted nine to three that neither Fowler nor any of its employees were at fault in causing the accident.
The finding of fact by a jury should be upheld unless it is shown to be clearly wrong or manifestly erroneous. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); Canter v. Koehring Company, 283 So.2d 716 (La. 1973). After reviewing the entire record in this case, we find that the factual determination by the jury that neither Fowler nor its employees were at fault in causing the accident is correct.
The plaintiff argued at trial that the accident was caused by the negligence of the swamper, Anthony Hill, in signaling the truck driver to lower the "dog house" without having good reason for doing so, and by the negligence of Fowler Trucking Company in sending Hill out to do the swamper's job without proper supervision and with no instructions or training as to how to accomplish the job. The evidence presented in this case does not support the plaintiff's contentions that Fowler or its employees were at fault.
In support of his contentions, the plaintiff related to the jury his version of how the accident occurred. The plaintiff testified that he asked the swamper to get a bind on the "dog house" and that the swamper said he did have a bind on it. The plaintiff said he observed the chains on the load to be taut. The plaintiff claimed the "dog house" was about ten inches out of position and that he was using the pry bar to make the "dog house" fit into the angle irons when the "dog house" fell down onto the pry bar and the pry bar hit the top of his foot.
Roy Gooch was the tool pusher for Sawyer Drilling and was in charge of all operations on the rig. Gooch testified he was standing with Ronald Eugene Dickerson *1322 toward the back of the rig when the accident occurred. Gooch stated that Dickerson was also using a pry bar to guide the "dog house" into place and was using the bar to insure that the "dog house" did not come into contact with the floor of the rig. According to Gooch, he did not remember signaling the swamper to let the "dog house" down and did not hear anyone tell the swamper to get a bind on the "dog house." Gooch stated that Fowler employees followed the direction of Sawyer's tool pusher during the rigging up process and stated he did not see Fowler's truck driver, Billy Ray Hall, "do anything wrong."
Ronald Eugene Dickerson testified that they were having difficulty in getting the "dog house" between the angle irons because the angle iron on the rig was bent. Dickerson testified he did not hear the plaintiff say anything prior to the injury and that the "dog house" dropped only two to two and half inches, not the ten inches claimed by the plaintiff.
Roy Roden, also a Sawyer employee, testified he was between the top and bottom "dog houses" at the time the accident occurred and he heard the plaintiff ask the swamper if he had a bind on the "dog house." However, Roden also indicated that when the accident occurred, the "dog house" fell from two to four inches, which was the depth of the angle iron.
Barry Culpepper, a Sawyer employee, testified that he heard the plaintiff tell the swamper to get a bind on the "dog house" and saw the swamper signal the driver. However, this testimony was impeached on cross examination. In Culpepper's deposition, he stated he never heard a verbal signal and never saw the swamper signal the driver.
Robert B. Moore, a Sawyer employee and fishing buddy of the plaintiff, testified that he was on the ground on the day of the accident and that he heard someone say to get a bind on the "dog house" but he could not identify who gave the command, did not see the accident happen and did not know where the swamper was located when the accident occurred.
The plaintiff called the Fowler employees on cross examination who were working with the Sawyer employees on the date of the accident. The truck pusher, Lavell Estep, testified that ordinarily the truck pusher would be in charge of the truck driver and the swamper but that when this accident occurred he was at another location working on a water pump.
The truck driver, Billy Ray Hall, employed by Fowler, testified that on the day of the accident he had raised and lowered the "dog house" several times to make it fit properly. He testified that he followed only the signals of the swamper and that on the day in question he was unaware that an accident had occurred until the cables on the "dog house" were taken off and he had moved the truck away to complete another task.
The swamper, Anthony Hill, also employed by Fowler, testified by means of deposition. Hill said that he was being signaled by someone on the rig as to when to raise and lower the dog house. He testified the "dog house" was raised and lowered about three times. Hill's deposition was admitted into evidence because he was unavailable to testify. At the time of the trial, Hill was serving a federal prison sentence after pleading guilty to a charge of bank robbery.
Finally, plaintiff presented the testimony of William Bateman, a professional engineer and safety consultant who offered expert testimony. Mr. Bateman testified that ideally the truck should have approached the rig from the opposite direction and that the swamper should have been in a different location in order to have a better view. However, we find no factual basis for this opinion.
Mr. Bateman was also critical of the lack of training afforded swampers by Fowler Trucking but did say there are fairly common signals used for operating a winch which are not formal or standardized and can be learned by on-the-job training.
Bateman testified on direct examination that the plaintiff could not have exerted the force necessary to move the "dog house" with a pry bar, however, on cross *1323 examination he revealed that far less force was actually required than he had originally stated. Bateman also indicated that the gin poles on the truck should have been a little longer. The poles actually used came in contact with the "dog house" and interfered with the placement inside the angle irons.
From a review of the record, it appears that Hall and Hill were the only employees of Fowler Trucking who were present at the rig site at the time the accident occurred. The truck pusher, normally responsible for supervising Fowler employees, was not present. There was no showing, however, that anything would have been done differently had he been on the scene. Sawyer and its employees were the owners of the oil drilling rig and were responsible for rigging it up. Hill was required to rely on a Sawyer employee for directions in placing the "dog house." Although it is not clear which Sawyer employee was directing Hill, the record does show that Hill was taking directions from a Sawyer employee. The plaintiff failed to show that Hill's actions in following the directions of a Sawyer employee constituted negligence. The plaintiff himself chose to use a pry bar to position the "dog house" and did not do so at the direction of Fowler employees as alleged in his original petition. Even though plaintiff's expert stated it would have been better to approach the rig from the opposite side and that the gin poles should have been longer, this testimony does not conclusively show that Fowler was at fault in causing the accident. The record is unclear as to whether there was some obstruction preventing the truck from approaching the rig from the opposite direction. In addition, had the truck driver and swamper approached the rig from the other direction, they would have still been unable to see the plaintiff if a problem had occurred on the opposite side of the dog house from the truck.
In his brief, the plaintiff relies heavily on two cases which found a trucking company liable for accidents involving gin pole trucks. After a review of these cases we find them to be inapposite to the present factual situation.
In Lucas v. Deville, 385 So.2d 804 (La. App. 3rd Cir.1979), writs denied 386 So.2d 357 (La.1980), a truck pusher chose to use a gin pole truck to move a cement hopper rather than using a crane capable of lifting heavier weights. The truck pusher negligently failed to check to see if the hopper was completely empty. The hopper contained some cement which overloaded the truck and caused injury to the plaintiff who was driving the truck.
In Highlands Insurance Co. v. L.J. Denny & Son, 328 So.2d 779 (La.App. 3rd Cir.1976), writ denied 333 So.2d 237 (La. 1976), the defendant trucking company was hired to haul an oil rig to a new location. During the disassembly process, a chain hanging from some equipment being lifted by a gin pole truck caught on the rig structure and pulled the rig over. In that case, both the driver and swamper were aware of the chain and the danger it posed but proceeded to lift the equipment in spite of that knowledge.
In both these cases, the plaintiff showed that the defendant was or should have been aware of the danger and failed to act to prevent injury to others. In the present case, the plaintiff has failed to show that the defendants possessed any such knowledge or that they breached any duty owed to the plaintiff.
Therefore, under the evidence presented, the finding of the jury that neither Fowler nor its employees were at fault in causing the accident, is not clearly wrong or manifestly erroneous and we affirm that finding.

JURY INSTRUCTIONS
The plaintiff next objects to the exclusion by the trial court of certain jury instructions proposed by the plaintiff. The plaintiff also objects to the inclusion of certain jury instructions proposed by the defendant. For the following reasons, we affirm the trial court's decision regarding these instructions.
*1324 The plaintiff claims the trial court erred in failing to instruct the jury concerning concurrent cause and erred in failing to inform the jury that the court granted a directed verdict in favor of the plaintiff and against the defendants, finding that the defendants, Hall and Hill, were not the borrowed employees of Sawyer Drilling. We do not consider the plaintiff's arguments concerning the exclusion of these jury instructions.
Plaintiff's arguments regarding these instructions are not properly before this court. LSA-C.C.P. Art. 1793 provides that a party cannot assign as error the giving or failure to give proposed jury instructions unless he objects before the jury retires. Additionally, the objecting party must state with specificity the matter to which he objects and the grounds for the objection. A blanket objection to a denial of a requested jury charge without assignment of reasons does not comply with LSA-C.C.P. Art. 1793. Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La. App. 1st Cir.1975), writ denied 325 So.2d 279 (La.1976); Watts v. Aetna Casualty and Surety Company, 309 So.2d 402 (La. App. 2d Cir.1975), writ denied 213 So.2d 601 (La.1975); Helaire v. Liberty Mutual Insurance Company, 397 So.2d 8 (La.App. 3rd Cir.1981), writ denied 401 So.2d 975 (La.1981); Bechtel v. Entringer Bakeries, Inc., 422 So.2d 1299 (La.App. 5th Cir.1982). In the present case, the plaintiff failed to make specific objections to the failure to give the jury instruction regarding concurrent cause. The record does not indicate either a request by the plaintiff that the jury be informed of the court's ruling regarding the defendant's statutory co-employee status or an objection to the failure to so inform the jury. Plaintiff's failure to make specific objections precludes review of these arguments.
The same is true with respect to plaintiff's objection on appeal to the inclusion by the trial court of the defendants' proposed jury instruction concerning an employer's duty to provide a safe work place. The plaintiff argues the trial court erred by including inapplicable law concerning that duty. The trial court instructed the jury that the employer had a duty to provide a safe work place for its employees and to furnish the necessary apparatus to render safe the place of employment.
The plaintiff argues that the instructions given to the jury suggested that the defendants could be at fault only if neither plaintiff's employer nor his co-employees were at fault and that these instructions suggested to the jury that Sawyer Drilling might have been at fault and liable for the plaintiff's injuries. The plaintiff claims this was an improper consideration because Sawyer Drilling was required to pay worker's compensation and medical benefits to the plaintiff and was therefore immune from tort liability. Based upon Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La.App. 3rd Cir.1985), writs denied 481 So.2d 1330, 1331 (La.1986), the plaintiff contends that since Sawyer was not liable in tort, if Fowler and its employees were at fault at all in causing plaintiff's injuries, then plaintiff was entitled to recover the entire amount of his damages from the defendants.
We are not satisfied that plaintiff's alleged objection to the safe work place instruction was sufficient. Plaintiff never really objected to this instruction, but expressed "concern" that it would be given by the trial court. The plaintiff certainly did not point out to the trial court the basis for his "concern." Therefore, even as to this instruction, we do not believe plaintiff sufficiently presented the issue to the trial court to allow the trial court to correct any possible error. Therefore, plaintiff has failed to preserve any objection for review. LSA-C.C.P. Art. 1793.
However, if it could be said that plaintiff properly perfected for appeal his "concern" about the trial court's intention to give the instruction, and even if it could be said that the instruction was erroneous, we do not believe, in the context in which the instruction was given, that it created the kind of prejudice which would require the jury verdict to be set aside.
The adequacy of jury instructions given by a trial court must be determined in light *1325 of the jury instructions as a whole. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.1984), writ denied 458 So.2d 476 (La.1984); Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.1977), writs denied 351 So.2d 161, 162 (La.1977); Barnett v. New Orleans Public Service, 489 So.2d 452 (La.App. 4th Cir. 1986); Brown v. White, 405 So.2d 555 (La. App. 4th Cir.1981), writ granted 409 So.2d 657 (La.1982) reversed in part and affirmed in part on other grounds 430 So.2d 16 (La. 1982). Where some portions of the instructions are isolated from the context and are erroneous, the error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges are so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir.1980).
Plaintiff contends that the instructions suggested to the jury that if Sawyer was at fault, then the jury could not find Fowler at fault. We disagree. This instruction was given in the general context of the trial court's instructions relative to worker's compensation and the rights of Aetna to collect the compensation it previously paid to Mr. Anderson from any award which the jury might render in favor of Mr. Anderson. It is difficult to see how the jury could have inferred from this instruction, coming with other instructions regarding worker's compensation, that the court was suggesting to the jury that if Sawyer was at fault, Fowler could not be at fault.
The entire issue in the case was whether Fowler was at fault and this was clearly made known to the jury. Further, the first interrogatory propounded to the jury asked whether Fowler was at fault.
When taking the jury instructions in their context with other instructions given by the court relative to the reasons for payment of worker's compensation, and the rights of Aetna to recover their compensation payments from any judgment rendered in favor of plaintiff, and considering the manner in which the evidence was presented at trial and the argument of counsel, we are not satisfied that the instruction, even if erroneous, is sufficient to require that the jury verdict be set aside.
Further, however, our independent review of the record reveals that the plaintiff failed to show, by a preponderance of the evidence, that Fowler and its employees were guilty of negligence which caused the plaintiff's injuries. For this additional reason, the judgment of the trial court must be affirmed.

CONCLUSION
For the reasons stated above, we affirm the jury verdict finding that the defendants were not at fault in causing this accident. Our independent review of the record also reveals that the jury verdict was correct. Further, due to the plaintiff's failure to make specific objections on the record to the jury instructions, or to set forth a basis therefor, we do not consider his claims that the trial court's jury charge was erroneous.
All costs in this court and the court below are assessed to the plaintiff.
AFFIRMED.