655 So.2d 649 (1995)
Robeline M. MARTINEZ, et al., Plaintiffs-Appellants,
v.
SCHUMPERT MEDICAL CENTER, et al., Defendants-Appellees.
No. 27000-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*652 Sherburne Sentell, Minden, for appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for appellees.
Before MARVIN, NORRIS and STEWART, JJ.
STEWART, Judge.
Mrs. Robeline Martinez and her two daughters, Micki M. Browning and Pamela D. Martinez, filed suit against Schumpert Medical Center alleging that the hospital's negligence caused the death of Clifton Martinez. A jury found that the hospital's actions breached the standard of care but did not agree that the defendant's negligence contributed to the death of the patient. The plaintiffs subsequently lodged this appeal. For the assigned reasons, we affirm.

FACTS
Sixty-six year old Clifton Martinez was hospitalized at Schumpert Medical Center on May 8, 1988, suffering from shortness of breath, congestive heart failure and an elevated blood pressure. The treating physician, Dr. Thomas Smith, first placed Mr. Martinez in the intensive care unit for twenty-four hour observation.
Dr. Smith determined that Mr. Martinez's condition had greatly improved and ordered on May 9, 1988, that the patient be moved to the cardiac monitor wing of the hospital. There Martinez's cardiac condition could be monitored closely with the assistance of electronic monitoring units. To assist in the care of Mr. Martinez after his transfer to the cardiac monitor wing, Dr. Smith issued orders allowing Martinez bathroom privileges and the freedom to ambulate about the hall without assistance, if he elected. Mr. Martinez was transferred to the cardiac telemetry unit that morning.
The primary care nurse assigned to Martinez was Vicki Wood, a registered nurse. She testified that upon the arrival of Martinez, she received an oral report from the *653 transferring nurse and assessed Martinez's condition. She noted that the patient was awake, alert, and oriented. Woods stated that she instructed Mr. Martinez, in the presence of his daughter, Micki Browning, that he was only to get up with Wood's assistance, because she had not yet seen him ambulate. Mr. Martinez was also told by Patty Humphries, the monitor technician who connected him to the portable telemetry transmitter, to call the nurse's station before attempting to get out of bed.
After eating lunch, Mr. Martinez removed his nasal tubes and got up out of bed to go to the bathroom without any assistance from a nurse and without pressing the call buzzer beside his bed. Micki Browning testified that she heard her father void and then place the toilet seat down. Seconds later, she heard a blatant, blunt sound. Browning called to her father but heard no answer. She attempted to open the door, but discovered that it was locked from the inside. After unsuccessfully attempting to open the door, Ms. Browning ran into the hall to find help. Vicki Wood heard Ms. Browning and went with her to the room to open the door. When she failed to open the door, Wood looked for Diane Bricker.
Diane Bricker, a registered nurse, was assigned the task of watching the cardiac monitors on the date of the incident while the person on duty, Patty Humphries, went to lunch. Ms. Bricker walked away from the monitor for a minute to hook up another patient who had returned from a test. She testified that only a matter of seconds elapsed from the time that Ms. Woods told her that the patient had fallen, until she got to Martinez's room. When she arrived, Ms. Bricker used a pair of bandage scissors and immediately opened the door. Ms. Wood testified that approximately three to four minutes elapsed from the time that she heard Ms. Browning scream until Diane Bricker opened the bathroom door.
Vicki Wood was the first person in the bathroom and observed that the patient was having a seizure and that his right arm and leg was twitching. Martinez's skin was hot and sweating and his respiration was uneven and shallow. Once Martinez was moved to the bed, Wood further observed that she heard a rattling noise in his front and back chest. He did not respond to painful or verbal stimuli. The patient's blood pressure was 200/40 and there was no sign of cyanosis (blue skin color) or a head injury or trauma.
Vicki Wood called a "code blue" because the patient's breathing was shallow and irregular and she feared that he might suffer cardiac arrest. Because Mr. Martinez never arrested, CPR was not administered, the defibrillator was not used, and a code sheet was never completed. Patricia Hunt, a registered nurse, also observed that the patient's skin showed no signs of cyanosis when she attempted to start an IV in his arm. Oxygen was applied through a rebreather mask. At 12:30 p.m., Clifton Martinez was transferred back to the medical intensive care unit.
Nurse Dee Rizzo received the patient in ICU and did not note any bruises, bumps, lacerations or contusions on Martinez's head. Upon examination, Dr. Smith determined that the patient had some obvious neurological problems and as a result contacted Dr. Winston Brown, a neurologist, and a pulmonary specialist, Dr. Briggs. Dr. Brown concluded that the patient suffered a cerebral infarction or severe stroke on the right middle cerebral artery which caused irreversible damage. Dr. Smith testified that earlier access to the patient would not have made any difference. Clifton Martinez never regained consciousness and died on May 12, 1988.
At the request of the Martinez family and the parish coroner, the decedent's body was exhumed for autopsy. In his findings dated July 13, 1988, Dr. George McCormick concluded that Clifton Martinez's death was caused by a trauma to his head that was received when he fell. These findings precipitated the lawsuit later filed by Mrs. Martinez and the couple's two daughters.
At trial, the jury concluded that the delay in accessing the patient was below the standard of care, but found that this negligence was not a substantial factor in contributing to any injury or the death of Clifton Martinez. Plaintiffs moved for a JNOV and a new trial, but both were denied. Plaintiffs subsequently lodged this appeal.

*654 I. STANDARD OF REVIEW
The plaintiffs contend that the trial court made numerous errors in instructing the jury and in evidentiary rulings that tainted the verdict of the jury. Additionally, plaintiffs argue that the documentary evidence and objective evidence were inconsistent with witness testimony. Consequently, plaintiffs urge that the manifest error standard does not apply in this case and that this court should conduct a de novo review of the record. We find these arguments to be meritless.
A court of appeal may not set aside a trial court's finding of fact unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262 (La.App. 3d Cir.), writ denied 374 So.2d 660 (La.1979). However, when a jury is given incorrect instructions in the law, or when a trial court makes a consequential error in the exclusion of evidence, no weight should be accorded the judgment of the trial court which implements the jury verdict. See, Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985); Otto v. State Farm Mut. Auto. Ins. Co., 455 So.2d 1175 (La.1984); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corp., 320 So.2d 163 (La. 1975).
When there is a conflict in the testimony, reasonable credibility calls and factual inferences should not be disturbed on review. Arceneaux v. Domingue, supra; Canter v. Koehring Co., 283 So.2d 716 (La.1973). The Supreme Court has held that a reviewing court may overturn a factual finding grounded on a credibility call if the objective evidence so contradicts the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Absent such factors, however, a finding of fact based on the factfinder's decision to believe the testimony of one of two or more witnesses can virtually never be clearly wrong or manifestly erroneous. Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir.1990), citing Rosell v. ESCO, 549 So.2d 840 (La.1989).
In order to determine the necessity of a de novo review, this court must now address the alleged errors in jury instructions and evidentiary rulings of which the appellant now complains.

A. Jury Instructions
1. Res Ipsa Loquitur
In their first assignment of error, plaintiff contends that the trial judge erred when he excluded an instruction on res ipsa loquitur. Plaintiffs argue that although the defendant admitted fault, the court should have instructed the jury that the burden of proof shifted to the defendant to show that its negligence did not cause the death or any other harm to the decedent.
Res ipsa loquitur is a rule of circumstantial evidence. The rule applies when the facts suggest that the negligence of the defendant is the most plausible explanation of the injury. Thus, it is normally determined at the conclusion of the trial. McCartney v. Columbia Heights Nursing Home, 634 So.2d 927 (La.App. 2d Cir.1994), citing Culver v. Ochsner Foundation Hospital, 474 So.2d 984 (La.App. 5th Cir.1985), writ denied 477 So.2d 705 (La.1985); Hollier v. Lay Down Service, Inc., 554 So.2d 746 (La.App. 3d Cir.1989); Pool v. Missouri Pacific Railroad Co., 541 So.2d 969 (La.App. 2d Cir.1989), writ denied 543 So.2d 10 (La.1989).
This evidentiary doctrine is applicable where the defendant has the actual control of the agency, instrumentality or conditions which cause the plaintiff's injury; the evidence as to the true cause of the plaintiff's loss is more readily accessible to the defendant than to the plaintiff; and the accident is of the kind that does not occur in the absence of negligence and/or circumstances attending the accident create an inference of negligence on the part of the defendant. Morgan v. Willis-Knighton Medical Ctr., 456 So.2d 650 (La.App. 2d Cir.1984); Culver v. Ochsner Foundation Hospital, supra.
The doctrine of res ipsa loquitur does not dispense with the requirement that the plaintiff prove negligence by a preponderance of the evidence. A plaintiff relying on *655 res ipsa loquitur must prove circumstances which create an inference of negligence on the part of the defendant. Morgan v. Willis-Knighton Medical Ctr., supra.
In this case, the doctrine of res ipsa loquitur does not apply. The plaintiffs have failed to show that the negligence of the hospital was the most plausible explanation for the decedent's death. Further, the plaintiffs have failed to carry the burden of proving that the decedent's fall was the cause of his death. The medical testimony in this case largely supports the theory that Mr. Martinez suffered a severe stroke before falling in the bathroom. Plaintiffs have presented no evidence to substantiate their claim that the decedent would not have suffered a stroke and died in the absence of negligence. Evidence further establishes that, despite the admitted negligence of the hospital in accessing Martinez, there was nothing that could have been done to prevent the stroke or the damage caused. Mr. Martinez had been advised that he was to request the assistance of hospital personnel if he needed to get up out of bed for any reason. There is no indication in the record that before going to the bathroom, Mr. Martinez activated the buzzer near his bed or contacted the nursing staff. Thus, the doctrine of res ipsa loquitur does not apply, and the trial court correctly excluded it as an instruction.
2. Jury Instruction No(s). 27 and 36
In their fourteenth assignment of error, the plaintiffs object to the exclusion of jury instruction number 27, which stated that the "jury should trust the cold declarations of the hospital records rather than the memories of witnesses." Plaintiffs contend that had instruction number 27 been given, the jury would have viewed the hospital bill, which included a charge for defibrillation, as evidence that the patient was actually defibrillated, rather than merely accepting the testimony of several witnesses who say that he was not. Similarly, in assignment number fifteen, plaintiffs contest the deletion of the phrase "lost chance of survival" from instruction number 36.[1] Plaintiffs argue that because the phrase was deleted, the jury did not have an opportunity to consider such a loss as compensable.
The adequacy of jury instructions given by a trial court must be determined in light of the jury instructions as a whole. Anderson v. Fowler Trucking, Inc., 506 So.2d 1319 (La.App. 2d Cir.1987), citing Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir. 1984), writ denied 458 So.2d 476 (La.1984), Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.1977); Barnett v. New Orleans Public Service, 489 So.2d 452 (La.App. 4th Cir. 1986); Brown v. White, 405 So.2d 555 (La. App. 4th Cir.1981), writ granted 409 So.2d 657 (La.1982), reversed in part and affirmed in part on other grounds 430 So.2d 16 (La. 1982). Where some portion of the instructions are isolated from the context and are erroneous, the error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges are so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Anderson v. Fowler Trucking, Inc., supra; citing Bond v. Jack, 387 So.2d 613 (La.App. 3d Cir.1980).
In the instant case, the trial court excluded instruction number 27 because it was covered by the general instructions regarding credibility. The phrase deleted from instruction number 36 was also covered in another area of the charges.[2] Viewing the enumerated instructions in light of the instructions as a whole, we agree that the additions suggested by plaintiffs were repetitive and that their exclusion by the trial court was correct. Assignments fourteen and fifteen are meritless.

B. Alleged Evidentiary Errors 1. Victim Fault/Third-Party Fault
At the hearing on the plaintiff's motion in limine, the trial court ruled that because of Schumpert's failure to plead victim fault in its answer, the hospital was only permitted to raise the issue of decedent's *656 non-compliant behavior as rebuttal evidence rather than as a defense. Plaintiffs argue that any use of this evidence was objectionable and that the trial court erred in its ruling. We disagree.
Evidence that Martinez was a non-compliant patient and disobeyed staff instructions was not introduced to show that these actions caused the decedent's death, but was introduced to rebut evidence presented by plaintiffs that the decedent had been given medication that caused dizziness and to rebut allegations that the nursing staff could have prevented decedent's fall. The evidence presented by defendants revealed that Martinez was alert and oriented when he made the decision to go to the bathroom, in direct contravention of his nurse's orders. Moreover, defendant has not asserted that the decedent's fall caused his demise, but clearly argues that the cerebral infarction, suffered before the decedent fell, caused his death, and nothing the nursing staff could have done would have prevented it.
Similarly, plaintiffs argue that counsel for the defendant improperly raised the issue of third-party fault by stating in closing argument that it was incredible that the decedent's daughter, a registered nurse, waited four minutes before using the buzzer to request assistance. Plaintiffs submit that such a statement implied that because Ms. Browning was a registered nurse, she should have known better and her delay was negligent.
Many of the statements made by Ms. Browning about what actually occurred on the morning of the incident are disputed by the hospital staff. As a result, the credibility of the decedent's daughter was called into question, particularly on the issue of how much time transpired from the moment the decedent fell, until the bathroom door was opened. Thus, defense counsel's comments were merely an attack upon Browning's credibility, and not, as plaintiffs suggest, an attempt to raise the issue of third-party fault. The plaintiffs assignment as to this issue has no merit.
2. CT Scan v. Brain Tissue Sample
In assignments of error ten and eleven, the plaintiff complains that the trial court erred when it omitted testimony from the evidence depositions of Drs. McCormick and Rothman that visualizing the brain was a more definitive diagnostic procedure than a CT scan of the brain. We find this to be an incorrect assessment of the testimony that was adduced during the video depositions. On page 51 of the transcript of McCormick's videotaped deposition, he clearly explains that, in his opinion, non-invasive procedures such as a CT scan are "not as good as" actually invading the body and examining brain tissue. Similarly, Dr. Rothman's deposition is replete with references to the disadvantages of examining CT scans rather than "looking at the tissue grossly." See, Rothman Depo., p. 76. These assignments also lack merit.
In assignment of error number 12, plaintiffs assert that the trial court erred when it refused to allow Dr. Rothman, a neuroradiologist, to compare CT scan reports prepared by Dr. Homza to the findings of the coroner. After reviewing the transcript of Dr. Rothman's deposition and the portions that were deleted, we conclude that the court correctly excluded the testimony. Essentially, Dr. Rothman was being asked to weigh the evidence presented by plaintiffs' and defendant's experts rather than simply stating his expert opinion as to decedent's death. That, of course, was a task for the factfinder. This assignment is meritless.
Since we have rejected all of the plaintiffs' arguments related to jury instructions and the alleged evidentiary errors made by the trial court, the de novo standard of review is not applicable. We will review the remaining issues under the manifest error standard.

II. Denial of Challenge for Cause
Plaintiffs claim that the trial judge erred when he attempted to rehabilitate a prospective juror and subsequently refused to excuse the juror for cause.
Prospective jurors may be questioned by the parties but the court may control the scope of the examination to prevent unfavorable prejudicial questioning. La.Code Civ.P. art. 1763. Generally the scope of voir dire is within the sound discretion *657 of the trial judge and his rulings will not be disturbed on appeal in the absence of the clear abuse of discretion. State v. Straughter, 406 So.2d 221 (La. 1981). The general rule is that the decision to excuse a juror is within the sound discretion of the trial judge; to constitute grounds for reversal, the trial judge's abuse of discretion must be shown. Thibodeaux v. Stivers, 609 So.2d 291 (La. App. 3d Cir.1992), citing State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Martin, 558 So.2d 654, 658 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990).
Catherine Carroll, the juror in question, stated during voir dire that her niece worked at Schumpert Medical Center as a nurse's aide. Initially, when Ms. Carroll was asked whether her relative's job would influence her, she said, "Truthfully, it might." However, after further inquiry by the court as to whether Ms. Carroll, if instructed to do so, could disregard her niece's employment and give the plaintiff and defendant a fair trial, she responded that she could. Upon additional questioning by plaintiffs' counsel, Ms. Carroll reiterated that despite her niece's job, it would not be difficult to find a nurse employed by Schumpert at fault, if necessary. The court was satisfied with Ms. Carroll's response and denied plaintiffs' challenge for cause. Based on a review of the voir dire as a whole, we do not find that the trial court abused its discretion when it made further inquiry to determine the qualifications of Ms. Carroll nor did it err in denying plaintiffs' challenge for cause. This assignment has no merit.

III. HOSPITAL MISCONDUCT
Throughout their brief, particularly in assignments three, five, seven, eight, and nine, plaintiffs contend that the hospital is attempting to cover up its role in the death of Clifton Martinez. Although this court has found no evidence of such a conspiracy, we will briefly address each of the enumerated assignments.
In assignments of error three and eight, plaintiffs argue that because the decedent's hospital bill reflected a charge for the cost of defibrillation, the decedent must have been defibrillated. Plaintiffs claims that this proves that time was of the essence and controverts defendant's assertion that accessing the patient sooner would not have prevented his death. At trial, each witness that was present in the bathroom testified that the patient was not shocked with paddles. Vicki Wood, Martinez's primary nurse, also testified that the cart was called because of the potential for cardiac arrest. Since the patient never arrested, the cart, including the defibrillator paddles, was never used. It is clear that the charge for defibrillation was simply an error in billing on the part of the hospital, and does not reflect any covert action on the part of hospital personnel. We find no merit as to the these two assignments.
In assignment of error number five, plaintiffs argue that the trial court erroneously refused to admit evidence of Dr. McCormick's past problems with Schumpert in conducting autopsies. Plaintiffs contend that this would have substantiated their claims that Schumpert was attempting to cover up its role in the decedent's death.
This argument by the plaintiff is clearly unfounded. Martinez's death was not classified as a coroner's case by the hospital because it was not the result of an accident or an unusual event, but was caused by a cerebral infarction. There was no need for the coroner's participation. However, after McCormick was contacted by Micki Browning, the decedent's daughter and later decided to do an autopsy, the hospital assisted the family and the coroner by paying the cost of disinterring the body. These facts do not reveal that Schumpert was uncooperative or acted covertly. Thus, the trial court correctly excluded evidence of the coroner's past experiences with the defendant because it was obviously irrelevant and of little probative value as to these facts.
*658 In assignment of error number seven, plaintiffs complain that counsel for the defendant improperly suggested in his closing argument that plaintiff knew the identity of the emergency room physician who responded to the "code blue." Plaintiffs claim that they were unable to ascertain the identity of the physician because the defendant failed to divulge his identity during discovery.
Plaintiffs' counsel failed to lodge contemporaneous objections to defendant's characterization during closing argument that he now cites and condemns in brief. Failure to object constitutes a waiver of the right to complain of the argument on appeal. Ogletree v. Willis-Knighton Memorial Hospital, 530 So.2d 1175 (La.App. 2d Cir.1988), citing Temple v. Liberty Mut. Ins. Co., 330 So.2d 891 (La.1976); Luquette v. Bouillion, 184 So.2d 766 (La.App. 3d Cir.1966); Brumfield v. Brumfield, 477 So.2d 1161 (La.App. 1st Cir.1985), writ denied 479 So.2d 922 (La. 1985).
The final allegation of hospital misconduct is in assignment number nine in which plaintiffs argue that the verdict was tainted because a nun, who was also a hospital administrator, sat in the front of the jury and nodded in agreement with each point made in closing by counsel for the defendant. The trial court noticed the actions of the nun and clearly cautioned the members of the audience to refrain from exhibiting signs of agreement or disagreement with the arguments. This admonition sufficiently served to counter the possible adverse effects of the nun's actions. Temple v. Liberty Mut. Ins. Co., supra.

IV. Jury Findings Were Not Clearly Erroneous
Finally, in assignments of error numbers two, three, thirteen, sixteen, and seventeen, the plaintiffs argue that the jury made certain findings of fact that were erroneous.
The finding of fact by a jury should be upheld unless it is shown to be clearly wrong or manifestly erroneous. Anderson v. Fowler Trucking, Inc., supra, citing Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985); Arceneaux v. Domingue, supra, Canter v. Koehring, supra. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trier of fact's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring, supra. After reviewing the entire record, we find that the factual determinations made by the jury were correct.
First, plaintiffs claim in assignment number two that the jury erred when it concluded that the decedent did not suffer a head injury or a trauma from the fall. The record reveals that the defendant presented testimony from Dr. Homza, the treating diagnostic radiologist, Dr. Brown, the treating neurologist, and Dr. Paul McGarry, a neuropathologist. Each testified that Clifton Martinez suffered a cerebral infarct and that there was no evidence of a trauma or injury to the head. Dr. Brown treated Martinez at approximately 2:00 p.m. in ICU on the day of the accident and found no visible signs of trauma. Additionally, Nurse Dee Rizzo testified that when the patient returned to ICU, she checked him for bumps and bruises to the head, but found no signs. Even plaintiffs' own expert, Dr. Lewis Rothman, testified that the May 11 CT scan of Martinez showed no definitive signs of a head trauma. The only evidence presented regarding plaintiffs' theory that the decedent suffered a head trauma was the testimony of Dr. George McCormick. The jury simply was not convinced.
Thus, we find that based on the evidence, it was reasonable for the jury to conclude that the decedent did not suffer a head injury or trauma. This assignment of error has no merit.
Next, plaintiffs essentially complain in subparts (a) through (e) of assignment three that the jury erred when it concluded that time was not of the essence for the hospital staff. As the basis for this argument, plaintiffs contend that because a "code blue" was called, the decedent needed immediate attention and the delay worsened his condition.
*659 Both Vicki Wood and Diane Bricker testified that when they reached Martinez, his breathing was uneven and shallow. The crash cart and a "code blue" was called because of the potential for respiratory arrest, but Martinez's heart never stopped. Oxygen was administered to correct his irregular breathing, but the cart was never used. Moreover, the evidence adduced at trial indicated that the decedent suffered irreversible damage as a result of the cerebral infarct and that accessing Mr. Martinez faster would not have prevented the damage caused. Dr. Smith, the treating physician, admitted that it is unfortunate whenever there is a delay in accessing a patient, but that in this case the delay did not make a difference from a clinical standpoint. The jury's conclusion on this issue was not erroneous.
Plaintiffs claim in assignments of error thirteen and seventeen that the jury placed excessive weight on experts who did not make definitive findings and did not have a proper foundation. As the basis for this argument, plaintiffs assert that the defendant's experts discussed their findings in terms of "probability" and "possibility."
Certainly this court is aware that the field of medicine is not always an exact science and that there are margins of error. The mere fact that the experts who testified used qualifiers such "probability" and "possibility" to explain their opinions about the decedent's death does not indicate that their findings were not definitive. Each treating physician based their findings upon their own observations of Clifton Martinez and the appropriate hospital records, CT studies, and slides. The physicians called by the defendant who did not treat Martinez also based their opinions on the same x-rays and documents. Moreover, the plaintiffs' own experts also formed the basis of their opinions by relying on the same data. These assignments are clearly without merit.
Finally, plaintiffs contend that as property owner, Schumpert Medical Center had custody and control of the bathroom in which the incident occurred. Plaintiffs assert that the jury erred when it failed to hold Schumpert strictly liable for decedent's death under La.Civ.Code art. 2317.
In order to recover under Article 2317, plaintiff must prove:
1) that the thing which caused the injury was in the care or custody of the defendant;
2) that a vice or defect existed in the thing; and
3) that the vice or defect caused the injury.
See, Loescher v. Parr, 324 So.2d 441 (La. 1975); Goudchaux v. State Farm Fire & Casualty Co., 407 So.2d 1317 (La.App. 3d Cir.1981), writ denied, 412 So.2d 1114 (La. 1982). Plaintiffs have presented no evidence at trial or on appeal to substantiate the claim that there was a vice or defect in the lock of the bathroom door which created an unreasonable risk of harm or injury to the decedent. The jury's decision on the issue of strict liability was not manifestly erroneous. This assignment of error has no merit.
After a thorough examination of the record, we find that the jury could reasonably have reached the conclusion that the defendant acted negligently, but that defendant's negligence did not cause or contribute to the death of Clifton Martinez.

DECREE
For the reasons discussed herein, we affirm the verdict of the jury in favor of the defendant.
AFFIRMED.
NOTES
[1] See, Record at Vol. 1, p. 202.
[2] See, Record at Vol. 6, p. 1504.