663 So.2d 554 (1995)
Mae Adams Martin SMITH, Plaintiff-Appellant,
v.
Larry H. BUNDRICK, Jr., M.D., et al., Defendants-Appellees.
No. 27552-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 1995.
*555 Harvey R. Lexing, Monroe, for appellant.
Brian E. Crawford, Susan N. Belsom, Crawford & Anzelmo, Monroe, for appellees.
Before MARVIN and WILLIAMS, JJ. and CLARK, J. Pro Tem.
WILLIAMS, Judge.
The plaintiff, Mae Smith, filed this medical malpractice action against the defendant, Dr. Larry Bundrick, alleging that defendant negligently performed plastic surgery on her face. After a trial, a jury returned a verdict in favor of defendant. Smith appeals, challenging adverse rulings on her motions to set aside the jury verdict and for a new trial. For the following reasons, we affirm.

FACTS
In October 1989, Mae Smith consulted with Dr. Larry Bundrick concerning plastic surgery. Dr. Bundrick performed a face and brow lift on Smith at his surgery center on November 1, 1989. Smith sought this procedure to remove excess skin, fat and wrinkles from her face and brow. Smith was very dissatisfied with the results of the surgery because some wrinkles were not removed and the surgical incisions from the procedure were noticeable. After the surgery, Smith became depressed and considered suicide. Dr. Bundrick observed her depression and recommended that she seek psychiatric care.
*556 Smith consulted with several other plastic surgeons about additional surgery to improve her appearance. She was informed that because of the extent of the damage, corrective surgery could not completely repair her skin. On March 12, 1990, Smith underwent plastic surgery in San Antonio, Texas. During the procedure, Smith suffered a broken jaw, which required further surgery and the purchase of new dentures. Smith subsequently filed this medical malpractice claim against Dr. Bundrick. A medical review panel determined that Dr. Bundrick had not breached the standard of care. Plaintiff filed suit and a jury trial was held in May 1994.
Initially, Smith objected to the trial court's instruction regarding the standard of care for medical specialists. She also objected to the trial court's refusal to instruct the jury concerning the doctrine of res ipsa loquitur. After the first day of deliberations, the jury was deadlocked. On the second day, the jury was still unable to reach a verdict and informed the court that it was hopelessly deadlocked. The trial judge assembled the jury and delivered a supplemental jury instruction commonly known as an "Allen charge," which is an instruction acknowledged to be calculated to "dynamite" jury deadlocks and achieve jury unanimity. The judge also informed the jury that this was "a simple case," and that another jury, in a complicated case, had reached a verdict after only one hour. Within fifteen minutes thereafter, the jury reached a verdict. In a 9-3 vote, the jury found that Dr. Bundrick's conduct was within the standard of care for a plastic surgeon.
Smith filed motions to set aside the verdict and for a new trial, based on improper jury instructions, juror misconduct and improper comments by the trial judge. During the hearing on Smith's motions, she further alleged that the jury foreman acted improperly during deliberations. At the close of the hearing, the trial court denied the motions. Smith appeals.

DISCUSSION

Assignment of Error No. 1:
Smith argues that the trial court erred by denying her motion for new trial on the ground that the jury foreman had improperly presented the dictionary definition of malpractice to other jurors. She asserts that the foreman's conduct was so grievous that it precluded the impartial administration of justice. Dr. Bundrick maintains that even if the juror consulted a dictionary, such conduct was not prejudicial.
LSA-C.C.P. Art. 1972(3) provides that a new trial shall be granted when the jury has behaved improperly, such that impartial justice has not been done. Improper behavior of a jury is not specifically defined by statute or jurisprudence, but must be determined by the facts and circumstances of each case. Wright v. Hirsch, 556 So.2d 109 (La.App. 4th Cir.1990). A new trial is mandated only upon a showing that the jury misconduct was of such a grievous nature as to preclude the impartial administration of justice. Otherwise, the decision to grant a new trial is left to the sound discretion of the trial court. Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1122 (La.1984). The possibility that the decision making process was tainted by an outside influence should not be overlooked as insignificant. Willis v. Louisiana Power & Light Company, 524 So.2d 42 (La.App. 2d Cir.), writ denied, 525 So.2d 1059 (La.1988).
At the hearing on the plaintiff's motions, two jurors testified that the jury foreman presented a dictionary definition of the word "malpractice" to the jury during deliberations. The jury foreman did not testify. The plaintiff contends that the jury foreman's act precluded an impartial verdict. However, the plaintiff's counsel failed to elicit any testimony to indicate that the foreman's discussion of the dictionary definition of the term "malpractice" unduly influenced the jurors' decision or their assessment of the evidence presented during the trial. The evidence adduced at the hearing does not support plaintiff's claim that juror misconduct occurred which was so grievous as to prevent the jury from reaching an impartial verdict. We are unable to say that the trial court abused its discretion in denying Smith's motions *557 on this ground. Therefore, this assignment of error lacks merit.

Assignment of Error Nos. 2 & 3:
Smith next argues that the trial court erred in giving the jury the "Allen charge" as a supplemental instruction to break a deadlock. She also challenges the trial court's refusal to hear evidence from the juror who allegedly changed her vote and subsequently wrote "under protest" on the back of her polling form.
The "Allen charge" stems from the United States Supreme Court decision in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In that case, the court approved of an instruction designed to break jury deadlocks and achieve jury unanimity. The predominant thrust of the original "Allen charge" was that the jurors in the minority, whether they were for conviction or acquittal, should reconsider the reasonableness of their opinion because it was not shared by a majority of the jury. State v. Caston, 561 So.2d 941 (La.App. 2d Cir.1990).
The Louisiana Supreme Court has expressly disapproved of the use of an "Allen charge" in criminal cases and has held that the giving of such a charge, or any modification thereof, constitutes reversible error. State v. Nicholson, 315 So.2d 639 (La.1975); State v. Caston, supra. However, because of a procedural irregularity, we do not reach the issue of whether the supplemental instruction given in this civil case was impermissibly coercive.
It is well established that a party may not assign as error the giving of an instruction unless he objects either before the jury retires to consider its verdict or immediately thereafter, and states specifically the matter to which he objects and the grounds of his objection. LSA-C.C.P. Art. 1793(C). Smith contends that the trial court did not give her counsel an opportunity to object to the jury instruction. A review of the record indicates that although her counsel made objections on previous occasions at trial, counsel neither objected nor attempted to object to the supplemental jury charge after it was given. The trial judge's instruction provides in pertinent part:
I want to explain a few things to you and I want you to listen very carefully to what I have to say.... This is a simple case. There's only one legal issue to decide. There was a case that was tried the last two weeks. The ... jury was here for two solid weeks and they reached a verdict in a[n] hour. That was a complicated case. But, what happens if you cannot reach a verdict, then I must declare a mistrial. And I think you need to know the effect of a mistrial and just what that means, not only to Mrs. Smith, to Dr. Bundrick, but to the court, to the attorneys and to the Court system as well. First of all, the because I do more than just try civil jury trials. I hear criminal cases. I hear domestic cases. I hear juvenile cases. It will be many several months before I can reschedule this case for trial. As you may have imagined and you may have probably heard during the course of this trial, the attorneys and the clients have spent, you know, considerable sums of money, considerable amounts of time. Thein the case of the plaintiff, Mrs. Smith's family has come here from other parts of the country, to support her. Dr. Bundrick's practice is in Huntsville, Alabama, which is about a six or seven hour trip by car, here. He's had to give up his practice for a week. And all this will have to be done all over again. And if youtheif you think about that another jury is going to have to be selected and listen to the same evidence that you have and hopefully make a decision. That is a major, major undertaking. Andso what I'm going to do, is I'm going to send you back to deliberate. And if any of your minds have been closed, I want you to open those minds again and to discuss and deliberate on this case. And I want you to reach a verdict, if you can. I will tell you this, justice delayed is justice denied. I'll have the bailiff take luncheon orders for you. This Court is in recess.
Smith asserts in brief that the trial court's practice during trial was to dismiss the jury and then hear objections by counsel, but failed to provide the parties with that same opportunity following its "Allen charge." *558 Even in such a situation, it is counsel's affirmative duty to place objections on the record. A party's failure to timely object, for the record, with specificity, constitutes a waiver of the objection. Berrera v. Hyundai Motor America Corp., 620 So.2d 890 (La. App. 4th Cir.1993). While it appears that the supplemental jury instruction may have been improper, we are unable to find any evidence in the record of an attempted or belated objection to the jury charge. For example, even after court reconvened to receive the jury's verdict, plaintiff failed to object to the prohibited charge. Moreover, after the trial judge accepted the verdict and discharged the jury, the judge asked if the parties had any other matters for the court to address. The plaintiff again failed to object. Therefore, the plaintiff has waived the right to attack the supplemental jury charge on appeal.
Smith also contends that the trial court erred by refusing to take evidence at the motion hearing from the juror who allegedly changed her vote to break a deadlock and who wrote "under protest" on her polling form. As a general rule, affidavits or other testimony of jurors are not admissible to impeach their own verdict. Wright v. Hirsch, supra. However, a juror may testify on the question of whether any outside influence was improperly brought to bear upon any juror. LSA-C.E. art. 606(B).
In this case, Smith contends that the jury was improperly coerced into reaching its verdict by the prohibited jury instruction discussed above. Smith argues that the trial court exerted improper influence upon the jury and that the juror should have been allowed to testify regarding her reasons for writing the words "under protest" on the back of a jury polling form.
The record indicates that the polling forms were made available for inspection to both attorneys. Smith's counsel viewed the forms in the courtroom and did not object to their correctness or to the validity of the verdict. A party's failure to timely object for the record constitutes a waiver of the objection. Berrera v. Hyundai Motor America Corp., supra. Therefore, this assignment of error lacks merit.

Assignments of Error Nos. 4 & 5
Smith argues that the trial court erred by excluding a jury instruction on the doctrine of res ipsa loquitur.
Res ipsa loquitur is a rule of circumstantial evidence that applies when the facts suggest that the negligence of the defendant is the most plausible explanation of the injury. Martinez v. Schumpert Medical Center, 27,000 (La.App. 2d Cir. 5/10/95), 655 So.2d 649. The doctrine of Res ipsa loquitur is applied after all the evidence has been presented. Cangelosi v. Our Lady of the Lake Medical Center, 564 So.2d 654 (La. 1990). This doctrine does not dispense with the requirement that the plaintiff prove negligence by a preponderance of the evidence. Proof constitutes a preponderance when the entirety of the evidence, both direct and circumstantial, shows that the fact or causation sought to be proved is more probable than not. Cangelosi v. Our Lady of the Lake Medical Center, supra. A plaintiff relying on res ipsa loquitur must prove circumstances which create an inference of negligence on the part of the defendant. Martinez v. Schumpert Medical Center, supra; Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).
The standard to be applied by the trial judge in deciding whether to instruct the jury on res ipsa loquitur is whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. If reasonable minds could reach different conclusions on whether the defendant's negligence caused the plaintiff's injury, then the trial court must give the res ipsa loquitur instruction to the jury. Cangelosi v. Our Lady of the Lake Medical Center, supra.
In this case, the trial court refused to instruct the jury on the doctrine of res ipsa loquitur. Thus, the trial court implicitly found that Smith failed to prove that the results of the facelift would not have occurred absent the negligence of Dr. Bundrick. Causation is a factual finding which should not be disturbed on appeal absent *559 manifest error. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Aaron v. Bolds, 566 So.2d 195 (La.App. 2d Cir.1990).
Because the plaintiff failed to designate the trial transcript as a part of the record on appeal, the record before this court does not contain any testimony or evidence regarding the cause of the facelift results. Consequently, we cannot say that the trial court erroneously excluded a jury instruction on res ipsa loquitur. This assignment of error lacks merit.
Smith also argues that the trial court erred by refusing to instruct the jury that Dr. Bundrick was required to meet a national standard of care because of his medical specialty. A medical specialist is required to exercise the degree of care and possess the degree of knowledge and skill ordinarily exercised and possessed by physicians within his medical specialty. Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978); LSA-R.S. 9:2794. The adequacy of jury instructions given by a trial court must be determined in light of the jury instructions as a whole. Martinez v. Schumpert Medical Center, supra.
In this case, the trial court's instruction conforms with the language of LSA-R.S. 9:2794 relating to specialists. Viewing the instructions as a whole, we find that the trial court conveyed to the jury the appropriate standard of care owed by medical specialists and did not abuse his discretion in refusing to instruct the jury utilizing the words "national standard of care." Therefore, this assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of the defendant is affirmed. Costs of this appeal are assessed to the appellant, Mae Adams Martin Smith.
AFFIRMED.