620 So.2d 890 (1993)
Roxanne Mareno BERRERA, et al.
v.
HYUNDAI MOTOR AMERICA CORPORATION, et al.
No. 92-CA-2108.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1993.
*891 Charles J. Ballay, Belle Chase, and Brian J. Waid, Buras, for plaintiffs-appellants.
Michael T. Pulaski, Robert W. Maxwell, Pulaski, Gieger & Laborde, New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and BYRNES and PLOTKIN, JJ.
BYRNES, Judge.
On November 14, 1988 a Hyundai Excel being driven by Louella Mareno in Tangipahoa Parish, left the road and struck a tree. Louella Mareno was killed. Her daughter Roxanne Berrera and her daughter-in-law Mary Mareno, as well as their children, Wallie Sounier, Daniel Mareno, and Jordan Mareno were passengers in Louella's vehicle. All suffered varying degrees of injury. This suit was filed by or on behalf of all of said passengers, including the minor children, along with Roy Mareno, Jr., James Mareno, and Virginia Mareno as Louella's surviving children.
On September 19, 1991 a twelve person jury, by a 9-3 majority, determined that plaintiffs did not prove there was a defect in the subject vehicle and returned a verdict in favor of defendants. Plaintiffs' subsequent motions for judgment notwithstanding the verdict and, alternatively for a new trial, were denied. All plaintiffs joined in this appeal. We affirm.
The Tangipahoa parish road was in very poor condition at the time of the accident and had numerous potholes. Roxanne Berrera cautioned her mother that the road "was terrible" before they reached the scene of the accident. Ms. Berrera claims the vehicle hit one large pothole on the side of the road and, as her mother tried to steer around a second pothole, she lost control of the vehicle. Physical evidence indicated that Louella Mareno made excessive steering maneuvers after striking a pothole, lost control of the car, and hit a large pine tree. The physical evidence also indicated that none of the vehicle's occupants were wearing seat belts. Testimony from a physician/biomechanics expert, Dr. James Raddin, indicated that Louella Mareno sustained her fatal injuries when her chest impacted the steering column immediately after impact with the tree. Louella Mareno's seat was adjusted in its forwardmost position. Thereafter, Mary Mareno, the unrestrained rear seat passenger, struck the back of the driver's seat, causing damage to the seat and seat track. Plaintiffs' expert estimated the car's speed at 27 m.p.h. at impact with the tree; the defendant's expert estimated the speed at 32½ m.p.h.

I. The trial court properly responded to the jury's pre-verdict questions.[1]
During deliberations the jury sent a note to the Court asking:
"How to answer # 1 if we find both parties equally negligent?"
The jury was brought back in and instructed by the Court as follows:
All right. I have received a message from you in the form of a question which states, "How to answer No. 1 if we find both parties equally negligent." I am bound to respond to you that question No. 1 does not address negligence on the part of the plaintiffs. The questions are set up so that there is a progression from one question to the next if you continuously answer the question in the affirmative. Question No. 1 deals only and solely with whether or not the automobile was defective, that is, unreasonably dangerous to normal use. So, you have to answer that question in those terms.

*892 And if your answer is "Yes" then you move on to No. 2. If not, then you go to the end and answer the questions dealing with redhibitory defect. You do not and should not answer it in terms of or in connection with any other question. It stands by itself and must be answered in terms of what it specifically asks. Now does that answer your question?
Plaintiffs argue that in delivering this instruction the trial court committed reversible error by failing to notify counsel for plaintiffs of its intended instruction and failing to afford plaintiffs' counsel an opportunity to object to this instruction, all contrary to LSA-C.C.P. art. 1796 and Comment B thereunder. Plaintiffs raise this argument for the first time in this court. It was not raised at the trial. Nor was it raised in post trial motions. Plaintiffs' "Memorandum In Support of Plaintiffs' Motion For A Judgment Notwithstanding The Verdict and, In the Alternative, A New Trial" makes no mention of this alleged lack of notification of intended instruction and lack of opportunity for objection, even though this jury instruction was the focus of the memorandum. Plaintiffs followed up with a supplemental memorandum which also failed to raise these issues.
Plaintiffs base their argument on negative inference, i.e., they contend, in effect, that where the record is silent or unclear we should presume the trial court did the wrong thing. To the contrary, where the record is silent we will presume that plaintiffs failed to object because they had no objection to make at that time.
We hold that, in the absence of a timely and convincing showing that the record is in error, that statements and objections that do not appear in the record were never intended to be made. Plaintiffs have made no such showing and never attempted to raise the issue at trial or in post trial motions in the lower court.
We adopt the defendants' version of these events which is supported in key parts by the record, and where the record is unclear or silent the inferences and conclusions drawn by defendants are supported by reason, logic and the law:
The bailiff passed the note regarding Jury Interrogatory No. 1 to Judge Roe while the jurors remained in the deliberation room. The question was read to counsel, and significant discussion was conducted. The Court's proposed supplementary instruction was presented to counsel prior to the jury being brought back to the courtroom. All counsel were aware of the Court's proposed instruction and expressed no concern with its content. No objection was made by plaintiffs' counsel before or after the instruction. A cursory review of the record will indicate that counsel for plaintiffs did not hesitate to make objections during trial. The suggestion on appeal that they were precluded an "opportunity" to object is without merit. The suggestion that Mr. Ballay "had to be called out of another trial ..." and was somehow unaware of the court's activity is not a valid issue. Mr. Ballay did leave the courtroom on several occasions but advised:
I have another proceeding downstairs. If there is anything regarding anything unusual, someone can call me or I would allow Mr. Wade to speak on my behalf.
No action was taken by the court without Mr. Wade being in the courtroom. This is uncontested. Moreover, defendants contend that both Mr. Wade and Mr. Ballay were present when the supplementary instruction was given. As Mr. Ballay's presence is specifically noted at those points in the record immediately preceding and following the time in question; and the record makes no mention of his departure from the courtroom; we will presume he was present when defendants contend he was. Therefore, both had full opportunity to object to the court's supplementary instruction. The fact that they failed to object on the record waives their right to further consideration on appeal. It is counsel's affirmative duty to place objections on the record, and the suggestion that the record is "void of any opportunity to object" is without merit.
La.C.C.P. art. 1793(C) states that "[a] party may not assign as error the *893 giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection." A party's failure to timely object, for the record, with specificity, constitutes a waiver of the objection. Trans-Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991); Boehm v. Bienemy, 508 So.2d 159 (La.App. 4 Cir.1987). Moreover, the right to attack on appeal an allegedly improper instruction given after the case has been submitted to the jury must be preserved by an objection made at the time the supplemental instruction is given. Duerden v. PBR Offshore Marine Corp., 471 So.2d 1111, 1113 (La.App. 3 Cir.1985), writ denied, 476 So.2d 355 (La.1985), citing Renz v. Texas & Pacific Railway Co., 138 So.2d 114 (La.App. 3 Cir.1962). The policy considerations underlying these rules are obvious. As the court stated in Renz, "Counsel may not permit or acquiesce in an easily corrected procedural error and then, after an adverse verdict, urge such error for the first time as a ground for setting aside the jury verdict reached by the expensive and cumbersome method of a jury trial."
In any event, plaintiffs' objection is without merit and would have made no difference in the outcome of the case. Plaintiffs submit that the supplementary instructions were substantively deficient because the court "ought to have reinstructed the jury relative to manufacturing defect, design defect, and unreasonably dangerous." The record indicates, however, that the court properly followed the discretionary provisions of LSA-C.C.P. art. 1796(C) which provide, when the jury desires information on a point of law, that the Court "... may recall the jury after they have retired:
(1) To correct or withdraw an erroneous instruction.
(2) To clarify an ambiguous instruction.
(3) To inform the jury on a point of law which should have been covered in the original instructions.
(4) To give such further instructions as may be appropriate." [Emphasis added]
Consequently, the only inquiry on this appeal is whether the trial court, in its discretion, properly gave "such further instructions as may be appropriate." We find the action taken by that court appropriate.
The trial judge's instruction was thorough and directed the jury to answer the interrogatories in the order set forth. For the trial court to skip Interrogatory No. 1 and discuss Interrogatories Nos. 5 and 6 dealing with apportionment of fault (i.e."negligence") would have caused confusion and ignored the reality that a product defect is an absolute prerequisite to further analysis. The foreperson indicated that the jury's question had been satisfactorily answered, and the jury subsequently determined that a defect, and therefore, causation and liability had not been established. Moreover, as this Court has held, the issue of causation is also a prerequisite to apportioning fault in a products liability case. Charles v. Bill Watson Hyundai, 559 So.2d 872 (La.App. 4th Cir.1990), writ Denied, 563 So.2d 1154 (La.1990). Causation had to first be addressed in Jury Interrogatory No. 2 before proceeding to the apportionment of fault. If the actions of Hyundai did not cause the plaintiffs' injuries, then further analysis is immaterial, including apportionment of fault. Id. at 874. Consequently, two major hurdles had to be crossed (establishment of a defect and legal causation) prior to considering apportionment of fault. For the trial judge to have adopted any approach other than directing the jury to answer the interrogatories in the required order would have led to confusion and been illogical.[2]
The jury's question regarding Interrogatory No. 1 was properly answered by the Court. The supplementary instruction properly directed the jury to respond to the *894 interrogatories in the proper sequence, requiring establishment of liability and causation prior to the apportionment of fault. Thus, even if a timely objection on the record had been made, the district court's action was appropriate and in accordance with the discretionary mandates of LSA-C.C.P. art. 1796.

II. The record supports the jury's finding that the automobile was not defective.
The testimony of plaintiff's expert, Mr. Jernigan, was that the vehicle's seat track was not in conformity with Hyundai's specifications because a "big Tooth" was not present and Jernigan's laboratory measurements revealed a mis-fabrication of the latching mechanism. Plaintiffs argue that this evidence "stands uncontroverted." Obviously, Mr. Jernigan failed to convince the jury.
As this court stated recently in Brewhouse v. New Orleans Public Service Inc., 614 So.2d 118 (La.App. 4 Cir.1993):
Our standard of review is set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989); Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987); and Miller v. Miller, 602 So.2d 330 (La. App. 4 Cir.1992) which stand for the following: When findings are based on determinations regarding the credibility of witnesses, the manifest-error clearly wrong standard demands great deference to the trier of fact's findings both express and implicit even though the appellate court may feel that its own evaluations and inferences are as reasonable; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's testimony, the trier of fact has the responsibility to determine which evidence is the most credible.
In reviewing contrasting expert testimony, the trier of fact has the responsibility to determine which evidence is the most credible.
The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record) but also upon the proper allocation of trial and appellate functions between the respective courts. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id. at p. 1112.
In the present case, the evidence overwhelmingly supports the jury's determination that the subject vehicle was not defective.
Defendants presented the testimony of three expert witnesses whose analysis of the physical evidence from plaintiffs' vehicle, the accident site, and medical records, indicated that there were no defects in the subject vehicle.[3]
Hyundai's first expert witness was Terry Thomas, a mechanical engineer who specializes in vehicle testing. Mr. Thomas introduced and explained crash tests conducted under conditions that closely paralleled those of plaintiffs' accident. The Hyundai test vehicle and its restraint system and seat tracks were identical to the subject vehicle and the speed of the vehicle duplicated that of plaintiffs' vehicle immediately prior to impact. The photographs and videotapes Mr. Thomas presented illustrated that the potholes that plaintiffs' vehicle *895 struck before impacting the trees would not have produced forces sufficient to cause the track to move forward past its end stop.
Mr. Thomas conducted a test that duplicated the impact of the subject vehicle with a tree at 30 m.p.h. The impact test showed the objective evidence that would be produced if the vehicle occupants were wearing seat belts on impact. Also, a test was run that duplicated the path of the vehicle through the potholes prior to striking the tree. The pothole test was conducted with the seat track latching mechanism totally disabled, enabling full movement of the seat on the track. The test was conducted so that the greatest possible forces could have been exerted on the seat and seat track system. The pothole test, which was viewed on videotape by the jury, showed that there were insufficient forces exerted to cause any forward movement of the seat on the seat track. This test contradicted Mr. Jernigan's proposal, that violent forward movement of the seat track would result when the car went through the potholes. The fact that the seat track latching mechanism was totally disabled during the test, with no resulting forward movement of the seat, renders irrelevant plaintiffs' claim that a manufacturing defect in the latching mechanism contributed to Louella Mareno's demise.
Hyundai's second expert, Dr. James Raddin, is an engineer and physician who testified as an expert in occupant kinematics, biomechanics and injury causation. Dr. Raddin reviewed all available physical evidence and concluded that none of the vehicle's occupants were wearing seat belts when the car collided with the tree. Moreover, Dr. Raddin presented evidence that explained why the driver's seat was deformed and moved past the end of the seat tract during the accident. Dr. Raddin testified that Mary Mareno, the rear seat belt passenger, violently collided with the back of the driver's seat during the accident:
The contact of Mary Mareno is what moves the left [driver's] seat track forward in this accident ... The fatal injury [to the driver] in all likelihood ... occurs based upon her own velocity towards the steering wheel and the contact of Mary Mareno to her seat happens later.
Thus, Dr. Raddin showed that Louella Mareno's fatal injuries were caused by her failure to wear a seat belt and contact with the steering wheel immediately after impact with the tree. Subsequent to that movement, Mary Mareno struck the back of the driver's seat with great force, causing deformation of the seat and movement of the seat forward past the end of the seat track. This biomechanical testimony was not rebutted.
Finally, Hyundai presented the testimony of Lee Carr, an expert in mechanical engineering with a specialty in accident reconstruction and failure analysis. Mr. Carr presented a scaled model of the accident scene and explained the testing he conducted. Mr. Carr's opinion was that the seat moved forward past the end of the seat track as the result of the significant force applied from the rear of the seat. It was his further opinion that the seat did not go past the end stop of the seat track when the vehicle struck the pothole. Contrary to plaintiffs' suggestion, Mr. Carr did not find evidence of any manufacturing or design defect in the seat track.
In sum, Hyundai presented expert testimony, amply supported by physical evidence and independent testing, that disproved plaintiffs' theory that the vehicle was defective. The physical evidence gathered from the subject vehicles, results of objective tests, Mr. Carr's accident reconstruction, and the principles of biokinematics demonstrated that plaintiffs' theory was a physical impossibility.
Plaintiffs argue that the testimony of their expert Mr. Jernigan that the automobile was defective was uncontroverted and therefore must be accepted as true. This argument is not supported by the record. What the record does support is the conclusion that the jury found the defendants' experts more credible than Mr. Jernigan. As discussed above, making such a determination is one of those matters specifically reserved to the fact finder in the absence *896 of manifest error, and we find no manifest error.
Finally, we find that even had the jury found that the vehicle was defective, the record does not support a finding that it was a vehicle defect that caused the damages claimed by plaintiffs.
For the foregoing reasons, we affirm.
AFFIRMED.
NOTES
[1] JURY INSTRUCTIONS

1. Do you find that the 1986 Hyundai Excel automobile was defective, i.e., unreasonably dangerous to normal use?
___ Yes ___ No
If your answer is "No", proceed only to number 8, 9 and 10. Once completed with those questions, sign and date this form and advise the bailiff.
If your answer is "Yes", go to Number 2.
2. Was the defective condition of the vehicle a proximate cause of the injuries sustained by the Plaintiffs?
___ Yes ___ No.
* * * * * *
[2] The Jury Interrogatories were framed in a manner consistent with the form approved in Charles v. Bill Watson, supra.
[3] The physical evidence introduced at trial included the actual seat belts taken from the accident vehicle, photographs of the vehicle's interior, a videotape of crash tests conducted under conditions similar to those of plaintiffs' accident, seat belts taken from test vehicles, diagrams illustrating plaintiff's body kinematics during the accident.