700 So.2d 932 (1997)
Mescal Blanchard BROWN, Thomas A. Brown and Gloria Brown Seely
v.
Tamela D. HUDSON, Rudolph Hudson, Shelter Mutual Insurance Company, State Farm Insurance Company, et al.
No. 96 CA 2087.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
*933 Robert E. Kleinpeter, Jay G. McMains, Baton Rouge, for Plaintiff-Appellant Mescal Brown.
*934 Michael T. Pulaski, Robert W. Maxwell, J. Jeff Raborn, New Orleans, for Defendant-Appellee Ford Motor Co.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
The accident which gave rise to plaintiff's cause of action resulted when a party barge and trailer came loose from its tow truck, crossed the center line of the roadway, collided with a Lincoln Town Car driven by plaintiff, and proceeded thereafter to strike a second vehicle. Numerous defendants were named in the ensuing litigation; however, by the midpoint of the trial, all claims had been settled with the exception of plaintiff's product liability claims against Ford Motor Company. From a jury verdict finding that no defect existed and a subsequent denial of her motions for new trial and/or JNOV, plaintiff now appeals.

FACTS
On or about July 21, 1991, at approximately 6:25 p.m., plaintiff, Mescal Blanchard Brown (hereafter, Mrs. Brown), was driving her 1984 Lincoln Town Car manufactured by Ford Motor Company in a northerly direction on La. Hwy. 1 near its intersection with La. Hwy. 416 in Pointe Coupee Parish. Defendant Tamela D. Hudson (hereafter, Ms. Hudson) was operating a 1983 Ford Pickup truck, owned by her father, defendant Rudolph Hudson, in a southerly direction on La. Hwy. 1. The truck was pulling a trailer loaded with a 24-foot Starcraft pontoon boat or "party barge," both of which were owned by Ms. Hudson.
The accident occurred when the boat and trailer became disengaged from the truck and drifted from the southbound lane into the northbound lane of La. Hwy. 1, striking the vehicle driven by Mrs. Brown. The impact of this collision caused Mrs. Brown's vehicle to leave the roadway to the right and travel approximately 180 yards before striking a tree at the edge of False River. The boat and trailer thereafter collided with a second vehicle following immediately behind the Brown vehicle which was occupied by Allie R. and Janie Lind Pogue.
Mrs. Brown and Mrs. Pogue both sustained very serious injuries. As a result of injuries received in this accident, Mrs. Brown was rendered blind, horribly disfigured, mentally deficient, and incapable of performing the simplest of daily activities. The Brown and Pogue families filed separate suits against various defendants in September, 1991. These suits were subsequently consolidated for discovery and trial. Additional defendants were later named through amendments to the pleadings. Ultimately, five classes of defendants were sued  (1) the driver of the truck; (2) the driver's father who owned the truck; (3) several young men who assisted in attaching the trailer and the loading of the barge; (4) the host of the party at which the boat was used, together with the corporation which owned the camp at which the party was held; and (5) Ford Motor Company, the manufacturer of the seat belt system in Mrs. Brown's Lincoln Town Car.
In early 1995, Mrs. Brown's children, namely, Thomas Brown and Gloria Brown Seely, moved to voluntarily dismiss and waive their claims for loss of consortium with their mother.[1] During the course of the trial, all claims were settled with the exception of Mrs. Brown's claims against Ford Motor Company.

ACTION OF THE TRIAL COURT
The jury, in a nine to three decision, concluded that the Lincoln's restraint system was not defective. The initial question on the verdict form addressed the issue of the alleged defect in the restraint system. Since the jury concluded that no such defect existed, issues of causation, allocation of fault and damages were never considered. Thereafter, Mrs. Brown timely filed motions for judgment notwithstanding the verdict, or in the *935 alternative, for a new trial based in part on her post-trial discovery that the jury foreman had failed to disclose certain facts during questioning on voir dire. The trial court denied plaintiff's motions and this appeal followed.

ISSUES ON APPEAL
On appeal, Mrs. Brown assigns the following errors:
1. The trial court erred in refusing to void the jury verdict due to misconduct by the jury foreman;
2. The jury's finding of no defect is manifestly erroneous since Ford's sole witness on defect agreed that the restraint system operated contrary to the owner's manual thereby rendering it defective;
3. The trial court erred in allowing the jury to decide the issue of defect;
4. The trial court erred in directing a verdict on breach of an express warranty; and
5. The trial court erred in directing a verdict on redhibition.
Mrs. Brown asserts that in light of the foregoing errors, this court is required to void the verdict returned by the jury in the trial court and conduct a de novo review of this matter.

LAW AND DISCUSSION

Juror Misconduct
In her first assignment of error, Mrs. Brown asserts that the trial court committed legal error in refusing to void the jury verdict due to misconduct by the jury foreman. Specifically, Mrs. Brown claims that the juror in question, who was later elected foreman, intentionally failed to disclose during voir dire questioning that he had been named as a defendant in a personal injury lawsuit filed four and a half years earlier. Mrs. Brown emphasizes that this omission takes on added significance considering the juror's status as foreman, coupled with the fact that a poll of the jury revealed that he sided with the majority in the 9 to 3 verdict of no defect.[2]
Under Louisiana law, not every instance of jury or juror misconduct necessitates the granting of a new trial or the remand of a case for a new trial. Gormley v. Grand Lodge of State of Louisiana, 503 So.2d 181 (La.App. 4th Cir.), writ denied, 506 So.2d 1227 (La.1987); Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1122 (La. 1984). The trial judge has much discretion in determining whether to grant a motion for a new trial. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1st Cir. 3/11/94), 634 So.2d 466, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094, reconsideration denied, 94-0906 (La.7/1/94), 640 So.2d 258, reconsideration denied, 94-0906 (La.9/16/94), 642 So.2d 185. Instead, the burden falls upon the mover to prove that the level of the behavior was of such a grievous nature as to preclude the impartial administration of justice. Uriegas v. Gainsco, 94-1400 (La.App. 3rd Cir. 9/13/95), 663 So.2d 162, writ denied, 95-2485 (La.12/15/95), 664 So.2d 458; Gormley v. Grand Lodge of State of Louisiana, 503 So.2d 181 (La.App. 4th Cir.), writ denied, 506 So.2d 1227 (La.1987); Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1122 (La.1984).
A decision to deny a motion for new trial based upon jury misconduct is reviewed pursuant to an abuse of discretion standard. Wright v. Hirsch, 560 So.2d 835 (La.1990). La.Code Civ. P. article 1972 sets forth the peremptory grounds for a new trial and provides in pertinent part that "[a] new trial shall be granted, upon contradictory motion of any party, in the following cases:... (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done." Improper behavior by a juror or jury is not defined and must be determined by the facts and circumstances of each particular case. Uriegas v. Gainsco, 94-1400 (La.App. 3rd Cir. 9/13/95), 663 So.2d *936 162, writ denied, 95-2485 (La.12/15/95), 664 So.2d 458; Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1122 (La.1984).
A review of Louisiana jurisprudence relative to juror or jury misconduct reveals that the courts of this state have been reluctant to set aside jury verdicts based upon allegations of improper behavior. Innocuous conversations between jury members and an interested party or his attorney during the course of trial have been held not to constitute improper behavior absent a showing of prejudice. See, Lejeune v. Union Pacific Railroad, 96-294 (La.App. 3rd Cir. 3/12/97), 693 So.2d 804; Searle v. Travelers Insurance Company, 557 So.2d 321 (La.App. 4th Cir.1990); Peters v. Atlanta International Insurance Company, 469 So.2d 421 (La.App. 3rd Cir.), writ denied, 474 So.2d 949 (La.1985); Kollet v. Baggot, 400 So.2d 1085 (La.App. 1st Cir.1981). Similarly, simple contact between court personnel and jurors during deliberations has been deemed insufficient for the granting of a new trial. See, Parker v. Centenary Heritage Manor Nursing Home, 28401-CA (La.App. 2nd Cir. 6/26/96), 677 So.2d 568, writ denied, 96-1960 (La.11/1/96), 681 So.2d 1271; Gormley v. Grand Lodge of State of Louisiana, 503 So.2d 181 (La.App. 4th Cir.1987).
The presence of expressive or highly opinionated persons on a jury has been held not to constitute improper behavior. See, Stockstill v. C.F. Industries, Inc., 94-2072 (La.App. 1st Cir. 12/15/95), 665 So.2d 802, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428; Theriot v. Theriot, 622 So.2d 257 (La. App. 1st Cir.1993), writ denied, 629 So.2d 1138 (La.1993); Blandino v. Brown Erection Company, Inc., 341 So.2d 577 (La.App. 2nd Cir.1977). Additionally, in Carlin v. Blanchard, 537 So.2d 303 (La.App. 1st Cir.1988), statements by jurors expressing dissatisfaction with defendant sheriff's department as a result of prior unrelated occurrences was determined not to be so grievous as to necessitate a new trial where the jurors indicated that they were not influenced by the statements in question and the jury was not polled. Discussions during deliberation of independent research conducted by a juror has also been held to be insufficient grounds for setting aside a jury verdict. See, Wright v. Hirsch, 560 So.2d 835 (La.1990); Smith v. Bundrick, 27552 (La.App. 2nd Cir. 11/3/95), 663 So.2d 554.
Facts substantially similar to those presented by the instant case were found in Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1122 (La.1984). In Bossier, a juror failed to disclose during voir dire and thereafter that the law firm of plaintiffs' counsel was representing him in an ongoing pending lawsuit. Additionally, like the foreman in the case before us, the juror in Bossier was one of nine who voted in favor of the verdict.
Like Mrs. Brown in the instant case, the defendant in Bossier argued that the juror's false answer on voir dire precluded a challenge by defendant. In support of its motion for a new trial, the defendant in Bossier, cited cases from Florida and Mississippi involving the failure by a juror and counsel to disclose material facts relating to the representation of the juror by an attorney involved in the trial. While the cited cases uniformly held that a new trial was required irrespective of a showing that bias or prejudice caused an unjust verdict, the court in Bossier held that "[t]he mere presence of an individual on the jury who was being represented by plaintiffs' counsel in another entirely unrelated matter, in and of itself does not establish misconduct or partiality sufficient to preclude the impartial administration of justice".[3]Bossier, 442 So.2d at 494.
In the case sub judice, the following colloquy took place between the juror in question and counsel for Mrs. Brown:

*937 Q: How about any lawsuits, anything of that sort? Have you  have you ever been involved in any lawsuits 
A: Uh.
Q:  or have you ever sued anybody or been sued?
A: No, sir.
Q: Same with your wife?
A: Not that I know of.
Q: Okay, and I'll ask you, how about your dad? Did he 
A: He had a cow had got out one time, and somebody had hit it, and they had a lawsuit against him.
Q: Okay. All right. Would any of those  I mean, that lawsuit wouldn't change any  your ability 
A: No.
Q:  to serve on this one, I hope. Okay. All right. Let's see, and  and how about you personally, have you ever been involved in a serious automobile accident?
A: No, sir.
In her motion for a new trial, Mrs. Brown alleges that a private investigator was retained following trial for the purpose of scheduling post-trial juror interviews. Upon contacting the juror in question, the investigator realized he had previously served this individual with process in an earlier, undisclosed lawsuit which had been filed in a different venue. Mrs. Brown accordingly attached a copy of the record of the undisclosed litigation to her motion. In connection with a subsequent memorandum filed by her in support thereof, Mrs. Brown also attached a copy of the deposition testimony elicited from the juror in the earlier action.
Upon review of this matter, it is undeniable that the juror in question failed to disclose on voir dire that he had been named as a defendant in a prior lawsuit filed four and a half years earlier. That litigation arose as a result of an incident wherein the juror, then 23 years of age, struck a youth on a bicycle one evening while returning from a day at the lake. There was evidence the juror had been drinking; however, there is no indication that he was ever charged with DWI. Nevertheless, the lawsuit included a claim for exemplary damages, which were not covered under his liability policy. The suit record reflects only that the suit was resolved some nine months later; and does not indicate whether the juror paid any portion of the settlement out of his personal funds.
While it seems inconceivable that the juror could have failed to recall this incident of four years previous, it is possible that the juror somehow concluded that counsel's question regarding prior lawsuits was directed towards suits which were ultimately tried, as opposed to those which were settled prior to trial. Another explanation could be that the juror was simply embarrassed by this incident and chose not to disclose it.
Our system of justice is centered around a search for the truth, and for this reason, we cannot condone this juror's failure to disclose facts asked of him during voir dire. Nevertheless, we cannot accept Mrs. Brown's argument that this juror was automatically biased and highly opinionated against her position at trial as a result of this earlier undisclosed and unrelated litigation. In our opinion, the fact that the juror failed to disclose he had been previously sued does not, by itself, constitute behavior of such a grievous nature so as to preclude the impartial administration of justice. For this reason, we cannot say that the trial court's refusal to grant a new trial constituted an abuse of discretion.

Operation Contrary To Owner's Manual
In her second assignment of error, Mrs. Brown asserts that the jury's finding of "no defect" is manifestly erroneous inasmuch as Mr. Lee Carr, a mechanical engineer retained by Ford, agreed that the restraint system found on Mrs. Brown's 1984 Lincoln Town Car operated contrary to the owner's manual. Mrs. Brown argues that such an admission amounts to a concession by Ford that the restraint system in her Town Car was defective. While Ford acknowledges that the description of the restraint system found in the owner's manual of the 1984 Town Car was incorrect, it does not concede that the system itself was defective.
The record reflects that the occupant restraint system found in 1983 and earlier *938 Town Car models utilized a dual retractor seat belt system. This meant that the shoulder harness portion of the restraint system operated differently from the lap belt portion. The retractor on the shoulder harness was equipped with a "comfort" or "window shade" tension eliminator feature which allowed the occupant to alleviate belt pressure on the chest by introducing a degree of slack into the system. Ford claimed that this feature increased seat belt usage by eliminating a major complaint expressed by a number of drivers: that seat belt systems cut uncomfortably across their neck or shoulder. Pre-1984 models also had a retractor on the lap belt which was not equipped with a tension eliminator; therefore, the lap belt would adjust automatically to a snug position around the occupant's waist.
In its 1984 through 1989 Town Car models, Ford switched to a single retractor, continuous loop seat belt system, which meant that both the shoulder harness and the lap belt were controlled by a single retractor equipped with the "window shade" tension eliminator. This meant that an occupant could now introduce slack into the lap belt as well as the shoulder harness. The seat belt provisions of the owner's manual which accompanied the 1984 and 1985 models remained unchanged from the 1983 edition and did not reflect this change in the operation of the seat belt system until 1986.
The Louisiana Products Liability Act (hereafter, LPLA) provides exclusive grounds for recovery against the manufacturer of an allegedly defective product. La. R.S. 9:2800.52. Under the provisions of the LPLA, a claimant seeking to recover must prove that his damages were proximately caused by a characteristic of the product that renders the product unreasonably dangerous in its reasonably anticipated use by the claimant or another person or entity. La. R.S. 9:2800.54(A). A product may be unreasonably dangerous due to: (1) its construction and composition; (2) its design; (3) the manufacturer's failure to provide an adequate warning; and/or (4) its failure to live up to an express warranty made by its manufacturer. La. R.S. 9:2800.54(B).
On appeal, Mrs. Brown asserts that the restraint system in her 1984 Lincoln Town Car was defective based upon Ford's failure to warn her that the lap belt would not adjust automatically in the manner described in the owner's manual. In support of this assertion, Mrs. Brown cites Bloxom v. Bloxom, 512 So.2d 839 (La.1987), and Dunne v. Wal-Mart Stores, Inc., 95-2047 (La.App. 1st Cir. 9/10/96), 679 So.2d 1034, for the proposition that a manufacturer can be held liable where instructions in an owner's manual are complete and correct, but not readily apparent, or simply incomplete. Accordingly, Mrs. Brown argues that liability should attach in this case where the provisions in the owner's manual are blatantly incorrect.
Upon review of this matter, we decline to hold that the jury erred in finding that the restraint system in Mrs. Brown's 1984 Lincoln Town Car was unreasonably dangerous or defective based upon inadequate warning. While it is undisputed that the seat belt system in the 1984 model operated differently from the manner described in the owner's manual, it is clear from the testimony of Mrs. Brown's own witnesses that she was a habitual seat belt user who routinely "popped" her seat belt to remove unwanted slack. La. R.S. 9:2800.57B(2) provides that a manufacturer is not required to provide a warning when the user knows of a characteristic of the product that may cause damage.
Mrs. Brown further argues that the restraint system was also unreasonably dangerous in design pursuant to R.S. 9:2800.56. Alleging that alternate seat belt designs were available, Mrs. Brown claims that if adopted for use on her 1984 Town Car, said alternate design would have been capable of preventing her injuries. La. R.S. 9:2800.56 provides:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed *939 the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternate design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
It is sufficient for our purposes to say that alternating theories of causation were advanced by Mrs. Brown and Ford. Mrs. Brown argued that slack in the seat belt caused her to strike the right side of her face on the vehicle's driver's side A-pillar and adjacent windshield area. Conversely, Ford argues that Mrs. Brown's injuries were sustained when a piece of metal trim from the party barge came loose, broke the windshield and passed through the occupant compartment of the vehicle. Ford further argues that the corner of the party barge intruded into the occupant compartment as it swept alongside Mrs. Brown's vehicle.
Though the jury never found that there was excess slack in the seat belt, we conclude that based on the record, it would have been reasonable to find that there was no excess slack in the seat belt. Thus, we cannot conclude the seat belt was unreasonably dangerous in design.
This assignment of error is without merit.

Consideration by Jury of Defect Issue
Mrs. Brown asserts, in her third assignment of error, the trial court erred in allowing the jury to consider the question of whether or not the restraint system was defective. In brief, Mrs. Brown concedes that at trial, all parties reasonably believed that the existence of a defect was a question of fact within the jury's province; however, in light of several recent decisions from this court, Mrs. Brown now argues that the question of defect is legal in nature, and therefore, is subject to de novo review by this court. Specifically, Mrs. Brown relies upon our previous decisions in Dixon v. Schwegmann Giant Supermarkets, 95-2048 (La. App. 1st Cir. 5/10/96), 673 So.2d 696; Green v. City of Thibodaux, 94-1000 (La.App. 1 Cir. 10/6/95), 671 So.2d 399, writ denied, 95-2706 (La.2/28/96), 668 So.2d 366 and; Phipps v. Amtrak, 94-1876 (La.App. 1st Cir. 11/20/95), 666 So.2d 341, writ denied, 95-3012 (La.2/28/96), 668 So.2d 368. In each of those cases, this court reversed the trial court's determination that the defect or condition complained of constituted an unreasonable risk of harm[4].
In the instant case, the initial question on the jury verdict form was "Did the restraint system in Mrs. Brown's Town Car have a defect?" The jury responded in the negative. Because the jury made a factual finding that the restraint system was not defective, there was no need for a further legal determination as to whether the defect was such that it presented an unreasonable risk of harm.
This assignment of error is without merit.

Directed Verdict as to Breach of Express Warranty
In her fourth assignment of error, Mrs. Brown asserts that the trial court committed legal error when it directed a verdict against her claim that Ford breached an express warranty. Specifically, Mrs. Brown argues that because the restraint system in Mrs. Brown's 1984 Lincoln Town Car did not operate in the manner provided in the owner's manual, this deviation constituted a breach by Ford of an express warranty.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Busby v. St. Paul Insurance Company, 95-2128 (La.App. 1st Cir. 5/10/96), 673 So.2d 320, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443. Pursuant to R.S. 9:2800.53 of the Louisiana Products Liability Act, R.S. 9:2800.51 et seq. (hereinafter, LPLA), an "express warranty" is defined as: *940 a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.
La. R.S. 9:2800.53(6).
A subsequent provision of the LPLA provides:
A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.
La. R.S. 9:2800.58.
Mrs. Brown points to the erroneous seat belt provision contained in the owner's manual of her 1984 Lincoln Town Car and contends that because the seat belt in the 1984 model does not operate as stated in the owner's manual, that said provision constitutes a breach by Ford of an express warranty.
As we have previously noted, it is undisputed that the seat belt system in the 1984 model operated differently from the manner described in the owner's manual. Based upon our review of the record, we can find no evidence that Mrs. Brown read the owner's manual or, more importantly, that provisions in question induced her to use the restraint system. See, Clay v. International Harvester Company, 95-1572 (La.App. 3rd Cir. 5/8/96), 674 So.2d 398. The record further reflects only that Mrs. Brown was a habitual seat belt user who was familiar with the way in which the restraint system operated. Based upon these findings, we are unable to say that reasonable people could not have reached a contrary verdict; therefore this assignment of error is without merit.

Directed Verdict as to Redhibition
The fifth and final assignment of error raised by Mrs. Brown is that the trial court committed legal error when it directed a verdict against her claim of redhibitory defect.
Pursuant to Acts 1993, No. 841, § 1, the civil code articles on redhibition were revised effective January 1, 1995. The record reflects that Mrs. Brown purchased her 1984 Lincoln Town Car on November 7, 1983. Thus the law in effect at the time of the sale is controlling. Palomo v. LeBlanc Hyundai Partnership, 95-278 (La.App. 5th Cir. 10/31/95), 665 So.2d 414, writ denied, 96-0399 (La.3/22/96), 669 So.2d 1214. At the time of the sale of the vehicle to Mrs. Brown, La. Civ.Code art. 2520 provided:

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
In directing a verdict in favor of Ford as to Mrs. Brown's redhibition claim, the trial judge noted, "I have not seen anything that looked like redhibition going on on this witness stand up here, I really haven't." We agree.
After a thorough review of the record in this matter, it is clear that while Mrs. Brown was an adamant seat belt wearer, she drove her vehicle for seven and a half years prior to this accident in July of 1991. There was no evidence that she was ever dissatisfied with the manner in which the seat belts operated, or that she ever tendered her vehicle to the dealer with a complaint about slack in the seat belt. Clearly, reasonable people could not conclude that the restraint system rendered Mrs. Brown's Town Car absolutely useless or its use so inconvenient and imperfect that she would not have purchased it. We must conclude that this assignment of error lacks merit.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed. All costs associated with this appeal are assessed against the plaintiff, Mescal Blanchard Brown.
AFFIRMED.
*941 SHORTESS, J., concurs in the result.
FOGG, J., concurs in part, and dissents in part with reason.
FOGG, Judge, concurring in part, dissenting in part.
Although I believe the result reached by the majority in this case is correct, I cannot agree with the position taken by the majority on the issue of juror misconduct; therefore, I respectfully concur in the result reached, and dissent in part for the reasons stated herein.
Following the close of the trial in the instant case, an investigator retained by plaintiff discovered that one of the jurors had answered falsely during voir dire when questioned as to whether he had ever been sued. It was revealed that the juror had in fact been named a defendant approximately four years earlier in a suit arising from a motor vehicle accident, during which the juror in question was allegedly driving while intoxicated and collided with a bicyclist. The lawsuit apparently concluded with a settlement within nine months of its filing. There is no doubt the juror was aware of the existence of the lawsuit since he was served notice of the litigation. However, when asked during the trial voir dire, "[H]ave you ever sued anybody or been sued," the juror responded, "No, Sir."
Plaintiff appeals the refusal of the trial court to grant a new trial on this basis. In upholding the trial court, the majority of this court opinion concludes: "the fact that the juror failed to disclose he had been previously sued does not, by itself, constitute behavior of such a grievous nature so as to preclude the impartial administration of justice." I do not agree.
As noted by the majority, our system of justice is centered around a search for the truth; therefore, how can we say that the perpetration of a falsehood on the court by a juror entrusted to render a verdict based on his finding of fact as to the truth of the matter at issue, does not constitute behavior so grievous as to preclude the impartial administration of justice? A juror who evidences a disregard for truth cannot be entrusted with the job of ascertaining truth.[1]
For this reason, I disagree with the majority conclusion on this issue and would find the jury verdict tainted by this juror's misconduct. Under these circumstances, it would be necessary for an appellate court to undertake an independent evaluation of the facts and adjudicate the controversy. Nevertheless, after reviewing the case, I believe the plaintiff failed to prove the existence of the defect as alleged. Consequently, I concur in the result of the majority opinion, finding no liability on the part of the defendant.
NOTES
[1] The record reflects that Mrs. Brown's children, Thomas Brown and Gloria Brown Seely, initially asserted claims for damages as a result of their loss of consortium, society and companionship of their mother and travel expenses incurred by Gloria Brown Seely in order to provide care to her mother.
[2] Pursuant to the provisions of La.Code Civ. P. article 1795, nine is the minimum of jurors who must concur to reach a verdict.
[3] In her brief in the instant case, Mrs. Brown relies on Pierce v. Altman, 147 Ga.App. 22, 248 S.E.2d 34 (1978), a Georgia appellate court decision which, absent a showing of bias or prejudice, reversed the trial court and granted plaintiffs a new trial based upon the jury foreman's untruthfulness during voir dire. Because Louisiana law requires the mover to prove that the conduct by the juror was of such a grievous nature as to preclude the impartial administration of justice, we decline to follow the holding of this case.
[4] The issues presented by the cited cases were whether: water on the floor in supermarket check-out aisle (Dixon), a broken municipal sidewalk (Green), and a recessed aisle in a railroad observation car (Phipps) presented unreasonable risks of harm.
[1] The only case cited to this court which addresses similar factual circumstances is that of Bossier v. DeSoto General Hospital, 442 So.2d 485 (La. App. 2 Cir.1983), writ denied, 443 So.2d 1122 (La.1984). In that case, a juror disclosed during voir dire an attorney/client relationship with plaintiff's attorney, the nature of which was not explored by defendant's attorney. During later voir dire questioning, defendant's attorney asked all members of the panel, "Have you ever been a party to a lawsuit before, either as a Plaintiff or as a Defendant;" to which the juror in question responded, "No, ..." It was later revealed that plaintiff's attorney was representing this juror in another ongoing matter. The Bossier court found that the juror had answered "incorrectly," but had not "intentionally misled defendant's counsel or the court concerning the relationship between the juror and plaintiffs' counsel;" no misconduct effecting the jury verdict was found in that instance. The court apparently found the juror believed the subsequent questioning was not addressed to the matter previously disclosed. Therefore, we do not find Bossier authoritative in this case.