879 So.2d 327 (2004)
Barbara WEST
v.
NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak.
No. 2003-CA-1707.
Court of Appeal of Louisiana, Fourth Circuit.
June 23, 2004.
*329 James R. Dugan II, David L. Browne Dugan & Browne, A PLC, Metairie, LA, for Plaintiff/Appellant.
Dow Michael Edwards, Timothy F. Daniels, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge LEON A. CANNIZZARO JR.).
JAMES F. McKAY III, Judge.
The plaintiff, Barbara West, appeals the trial court's judgment finding that the plaintiff failed to establish that the defendant, National Railroad Passenger Corporation, d/b/a Amtrak was negligent.
The instant suit was filed alleging that Amtrak was negligent and caused an unreasonably dangerous working condition, which resulted in the plaintiff's injury. The alleged injury occurred while she was employed at the Union Passenger Terminal in New Orleans with Amtrak.[1] The plaintiff asserts that the injury occurred during the course and within the scope of her employment as a coach cleaner. She was turning passenger seat No.17/18[2] in car No.34019, when it suddenly shifted and broke off of its pedestal before it reached its locked position. This caused the seat to rock back and forth causing her body to twist and resulting in injuries to her neck and shoulders.
After a trial on the merits the jury returned a verdict in favor of Amtrak finding that the evidence did not support a finding of negligence against Amtrak. The trial court rendered judgment in accordance with the jury verdict. The plaintiff's post verdict motion for new trial was denied.
In the plaintiff's first assignment of error, she argues that there was a trial procedural error that occurred during jury deliberations, specifically, the trial court's failure to return the jury to the courtroom as dictated by La. C.C.P. art. 1796[3]. In *330 conjunction with this issue, the plaintiff argues that the trial court failed to properly clarify the jury's question concerning the definition of negligence, thereby affecting the outcome of the jury verdict. The plaintiff asserts that during the course of deliberation the jury sent a hand written note to the trial court with a question concerning the definition of negligence. At that point the trial court summoned the parties to the courtroom and read the jury's note into the record. The jury question was "may we please have the definition of negligence?." The trial court addressed this question as follows:
THE COURT:
My statement is going to beI'm not going to give them a page, I'm just going to tell them to re-read the closing instructions. I'm not going to say re-read, because they haven't read it yet.
MR. SADIN [Ms. West's trial counsel]:
They don't have the instructions yet?
THE COURT:
They do.
THE CLERK:
Yes.
THE COURT:
Where is the one they had?
THE CLERK:
I gave it to Stan [the trial court's crier].
THE CLERK:
The ones you told us to update, I gave him a copy.
THE COURT:
And where is the one that you had? I want it. Go get it.
THE CLERK:
Okay.
THE COURT:
Go get it and say, Stan, where is the one that the Judge gave you? Put it in my hand so I can bring it back upstairs, so there will be no misunderstanding or confusion.
Hold on so I can give you this. And I'll date it and sign it. All right. Just bring back up that document.
That's it.
The plaintiff argues that it is unknown what actual communication transpired between the court crier or clerk and the jurors when he was delivering the document. The plaintiff also argues that the precise document given to the jury during their deliberations is indiscernible from the record. Furthermore, the court's closing instructions were not transcribed by the court reporter and are not found anywhere in the record although there is a reference to the instructions having been given. Finally, the plaintiff argues that the trial court failed to return the jurors to the courtroom for re-instruction which runs contrary to the mandates of La. C.C. P. art. 1796(A).
Conversely, the defendant argues that the trial court conducted an in depth and thorough jury charge conference, where the parties accepted the proposed closing instructions without objection.[4] Prior to *331 sending the jury to the deliberation room the trial court instructed the jury as follows:
All right. You have already something to write with and something to write on. If you have any questions, you don't talk to Mr. Jolly. You write it down and you knock on the door, he'll be sitting right outside. You pass the note to Mr. Jolly and then he will bring it to the Judge, and then I will, along with the lawyers attempt to answer any questions, if any.
...
This is the jury interrogatories which I'm going to send with you. This is the closing instruction which I'm going to send with you. Mr. Jolly give that to the jurynot right nowwhen they are going into the deliberation room.
The defendant further asserts that the trial court informed the parties that he would write a note to the jury advising them to read the closing instructions, and that the trial court signed and dated that note in the presence of both parties. The defendant also maintains that there were no objections by either side concerning this procedure. The defendant contends that the trial court's response which was, "Just bring back up that document. That's it." specifically indicates that there was to be no verbal communication with the jury.
The result was that the jury continued to deliberate for less than an hour and returned a unanimous verdict finding that Amtrak was not negligent.
No objections to the above described proceedings were made by either party. The right to attack on appeal an allegedly improper instruction given after that case has been submitted to the jury must be preserved by an objection made at the time the supplemental instruction is given. Berrera v. Hyundai Motor America Corp., 92-2108, (La.App. 4 Cir.1993), 620 So.2d 890, 893. The plaintiff, in the instant matter, did not object to the trial court's decision to refrain from giving additional instructions to the jury, nor did she raise the alleged ex parte communication at the time of the communication with the jury or even at the hearing on the motion for new trial. In fact the plaintiff only raises this issue on appeal with this Court. In Berrera, this Court stated:
The policy considerations underlying these rules are obvious. As the court stated in Renz,[5] "Counsel may not permit or acquiesce in an easily corrected procedural error and then, after an adverse verdict, urge such error for the first as a ground for setting aside a jury verdict reached by the expensive and cumbersome method of a jury trial."
Id.
In the absence of any record or objection concerning the procedural irregularity, no error, if there was any, was preserved on the record for appeal. Furthermore, although La. C.C.P. art. 1796 explicitly says that the jury shall be returned to the courtroom that statement is specifically to address an additional instruction issue. We are not convinced that this particular instance involves an additional instruction but merely a clarification of instructions already given to the jurors without objection. Nevertheless, we find that without the plaintiff's objection being lodged into the record it may not be reviewed on appeal. Therefore, plaintiff's argument is without merit.
In plaintiff's second assignment of error, she asserts that the trial court improperly *332 denied her motion for a new trial based on the misconduct of an official of the court and further that the jury verdict was contrary to the law and evidence presented at trial.
Specifically, the plaintiff argues that the trial court clerk's ex parte communications with the jury, as per the trial court's order, constitutes grounds for a new trial. We disagree based on the jurisprudence cited above in Berrera and note the plaintiff's failure to timely object to the trial procedure.
In specific reference to the plaintiff's motion for a new trial, La. C.C.P. art.1973 provides that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La. C.C.P. art.1972 (3) provides that: "A new trial shall be granted, upon contradictory motion of any party in the following cases: (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done." Though the grant or denial of a motion for a new trial rests within the discretion of the trial judge, the reviewing court must still evaluate the trial court's decision under an abuse of discretion standard of review. Uriegas v. Gainsco, 94-1400 (La. App. 3 Cir. 9/13/95), 663 So.2d 162, 170. Improper behavior by a juror or jury is not defined; therefore, the facts and circumstances of each particular case must be reviewed to determine whether said behavior was improper, and the trial courts as well as the reviewing courts must not overlook the behavior as being insignificant. Id.; cf. Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181. A new trial is mandated only upon a showing of jury misconduct which is of such a grievous nature as to preclude the impartial administration of justice. Bossier v. DeSoto General Hosp., 442 So.2d 485, 493 (La.App. 2d Cir.1983). Otherwise, the granting of a new trial is left to the sound discretion of the trial court. Id. Not every instance of jury misconduct necessitates the granting of a new trial. Gormley v. Grand Lodge of State of La., 503 So.2d 181, 186 (La.App. 4 Cir.1987). The burden falls upon the one who is moving for a mistrial to prove that the level of the behavior was of such a grievous nature as to preclude the impartial administration of justice. Brown v. Hudson, 96-2087 (La.App. 1 Cir.9/19/97), 700 So.2d 932. This is a heavy burden on the mover. The courts of this state have been reluctant to set aside jury verdicts based upon allegations of improper behavior. Brown, supra. Contact between jurors and court personnel during deliberations has been found insufficient to grant a new trial. See Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568; Gormley, supra. It is clear that not every instance of alleged jury misconduct necessitates the granting of a new trial.
The jury may well have misunderstood the elements of negligence; nevertheless, the appellant failed once again to object. Furthermore, L.C.C.P. art.1972, unfortunately gives us a rule without a specific remedy to rely on. We believe that under the appropriate circumstances reversal and remand for a new trial might be justified. However, in the instant matter neither a motion for a mistrial nor a contemporaneous objection was made on the issue of the alleged misconduct or procedural infraction; only after the jury returned an unfavorable verdict did the plaintiff protest. Therefore, we find that this procedural flaw did not rise to the level of reversible error, nor was it of such a grievous nature as to preclude the impartial administration of justice. Furthermore, it is counsel's affirmative duty to place an objection on the record; the record is void *333 of any objection thereby waiving the appellant's right to further consideration of this issue on appeal. This assignment of error is without merit.
In plaintiff's second argument on the issue of the trial court's denial of her motion for a new trial, she asserts that the jury verdict was contrary to the law and evidence presented at trial. She maintains that the jury did not understand the negligence standard that the trial court directed them to apply and as such a new trial is warranted. The crux of plaintiff's argument is that the jury misapplied the Federal Employers' Liability Act (FELA) negligence standard.
In order to recover under FELA, the plaintiff must establish that (1) he was injured within the scope of his employment; (2) the employment was in furtherance of the railroad's commerce in interstate transportation; (3) his employer was negligent; and (4) this negligence played a part in causing his injury. Williams v. Southern Pacific Transp. Co., 813 F.Supp. 1227 (S.D.Miss.1992). The standard for reviewing jury awards in FELA cases has been explained by this Court in E'Teif v. National R.R. Passenger Corp., 98-2503, (La.App. 4 Cir. 4/22/99), 733 So.2d 155, 157 as follows:
In FELA actions brought in state court, federal substantive law applies. However, state rules of procedure apply in state court. St. Louis Southwestern Ry. v. Dickerson, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). Accordingly, state courts are governed by federal law in determining whether the evidence is sufficient to support a jury's verdict. Dufour v. Union Pacific R.R., 610 So.2d 843-846 (La.App. 1 Cir.1992), aff'd, 614 So.2d 1263 (La.1993) citing Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 66-67 (1971). Ellender v. Texaco, Inc., 425 So.2d 291, 294 (La.App. 3 Cir.1982). The United States Supreme Court has stated that the standard for reviewing whether a FELA plaintiff's evidence is sufficient to support the jury's verdict is whether, viewing the evidence in the light most favorable to the plaintiff, there is a "complete absence of probative facts to support the conclusion reached by the jury." Dennis v. Denver & Rio Grande Western R.R. Co., 375 U.S. 208, 210, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963). Brady v. Southern R.R., 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943). Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).
The appellate courts of this state have afforded great weight to jury verdicts in FELA cases. The First and Second Circuits have required a "complete absence of probative facts" before disturbing a jury's award. Dufour, 610 So.2d at 846. Broussard v. Union Pacific R.R., 29,769, 29,770, and 29,768 (La.App. 2 Cir. 8/28/97), 700 So.2d 542, 548. Our own Court has required that there be clear abuse of the jury's "much discretion." Jackson v. CSX Transp., Inc., 97-0109 (La.App. 4 Cir. 12/23/97) 712 So.2d 514, 522.
Unlike Louisiana workers' compensation law, which grants an employer tort immunity in exchange for fixed statutory benefits payable regardless of fault, FELA allows recovery only if the worker can prove that his employer was negligent. To prove negligence, the appellant was required to show that the railroad, acting through its agents or employees, breached one of its well-established duties. 45 U.S.C. § 51. Negligence is a federal question, which is not substantially different than what state and local laws define as being negligent. Alabama Great Southern R. Co. v. Jackson, 587 So.2d 959 (Ala.1991). A railroad has a duty to provide a safe workplace. *334 Following the passage of FELA, the emergence and wide acceptance of workers' compensation statutes raised questions that FELA imposed an unfair burden upon the railroad workers by predicating recovery on the employer's negligence; however, in practice, liberal construction has diminished the impact of the negligence requirement. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). In a series of decisions, the U.S. Supreme Court broadened and liberalized the definition of fault and causation under FELA. Most recently in Consolidated Rail Corp., supra, Justice Thomas wrote for the court:
We have liberally construed FELA to further Congress' remedial goal. For example, we held in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), that a relaxed standard of causation applies under FELA. We stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id., at 506, 77 S.Ct., at 448. In Kernan [v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958)], supra, we extended the reach of the principle of negligence per se to cover injuries suffered by employees as a result of their employers' statutory violations, even if the injuries sustained were not of a type that the relevant statute sought to prevent. See id., 355 U.S., at 432-436, 78 S.Ct. at 398-400. And in Urie [v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)], supra, we held that occupational diseases such a silicosis constitute compensable physical injuries under FELA, thereby rejecting the argument that the statute covered only injuries and deaths caused by accidents. See id., 337 U.S. at 181, 69 S.Ct. at 1030.
In the instant matter the plaintiff has failed to provide any proof that the seat was broken prior to her attempt to turn the seat into a forward position. The only evidence presented to the jury was the plaintiff's personal opinion of what occurred. During the course of cross-examination the following exchange occurred:
Q.... My question is, at the time that you began to turn the seats, it felt pretty much the same as the others had felt; isn't that right?
A. Yes.
Q. And you didn't notice any problems until the incident happened?
A. Correct.
Q. And at the time you had almost gotten the seat back to the locked position when it happened; isn't the right?
A. Yes.
Q. In fact, that being the case, before this accident happened, you had no warning that there was any kind of problem?
A. Correct.
Upon examination of the evidence presented at trial, just prior to the alleged accident, Freddie Jones, a carman working in Amtrak's mechanical department, had inspected the subject seat as part of his regularly assigned duties as a carman. Additionally, it was clear from the position of the seats, facing the window as opposed to a forward position, that the night shift had inspected the car and the seats. In fact, Ms. West admitted that she relied on the carmen inspecting and fixing broken seats. Ms. West stated, "I went on the coach car to turn the seats, and as I was turning the seat, the seat came off the pedestal and it rocked back and forth, my body went along with it, and I got injured. And I had pain in my neck, shoulders...." *335 She also said, "It turned the way it was suppose to, but it came off the pedestal."
The fact that this incident happened, without notice, does not necessarily indicate that there was some negligence on the part of the defendant. Our application of FELA standards does not consist of a negligence per se rule nor does it dictate a strict liability interpretation. For this Court to apply either of these standards would be contrary to the applicable law and jurisprudence. Furthermore, the plaintiff has not raised any statutory violation by Amtrak. It is therefore reasonable to conclude that Amtrak had neither notice nor forseeability of the problem until Ms. West was injured. Given the extensive medical evidence and testimony, there is no doubt that Ms. West was severely injured by this unfortunate accident but to correlate this injury with any negligence on the part of Amtrak is a stretch.
Therefore, we find that the jury verdict, finding no negligence on the part of Amtrak, is supported by a fair interpretation of the law and evidence presented at trial. Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] As a railroad worker, Mrs. West is not covered by workers' compensation law. Thus, Mrs. West filed her suit against Amtrak pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq, which provides the exclusion remedy for railroad employees injured on the job.
[2] Apparently, the two seats are connected.
[3] Art. 1796. Additional instructions

A. If the jury, after retiring for deliberation, desires to receive information on any point of law, they shall be conducted to the courtroom.
B. After giving notice to the parties, the court may give the appropriate instructions.
C. The court, after giving notice to the parties, may recall the jury after they have retired:
(1) To correct or withdraw an erroneous instruction.
(2) To clarify an ambiguous instruction.
(3) To inform the jury on a point of law which should have been covered in the original instructions.
(4) To give such further instructions as may be appropriate.
(emphasis added)
[4] Copies of the proposed jury instruction are in the record.
[5] Renz v. Texas & Pacific Railway Co., 138 So.2d 114 (La.App. 3 Cir.1962).